# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ADAM KANUSZEWSKI and ASHLEY
KANUSZEWSKI as parent-guardians and
next friend to their minor children, D.W.L.,
R.F.K., and C.K.K.; SHANNON LAPORTE,
as parent-guardian and next friend to her
minor children, M.T.L. and E.M.O.; and
LYNNETTE WIEGAND, as parent-guardian
and next friend to her minor children, L.R.W.,
C.J.W., H.J.W., and M.L.W.

Case No.: 18-cv-10472

Hon. Thomas L. Ludington,
District Court Judge

Hon. Patricia T. Morris,
Magistrate Judge
_____

*Plaintiffs*,

v.

**CORRECTED
COMPLAINT**
_____

MICHIGAN DEPARTMENT OF HEALTH
AND HUMAN SERVICES; NICK LYON,
sued in his official and individual capacities;
DR. SANDIP SHAH, sued in his official and
individual capacities; DR. SARAH LYON-
CALLO, sued in her official and individual
capacities; MARY KLEYN, sued in her
official and individual capacities; MICHIGAN
NEONATAL BIOBANK, INC also known as
MICHIGAN NEONATAL BIOREPOSITORY;
DR. ANTONIO YANCEY, sued in his official
and individual capacities,

**JURY DEMANDED**

*Defendants*

_____/

## CORRECTED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF WITH MONEY DAMAGES FOR CONSTITUTIONAL VIOLATIONS

*OUTSIDE LEGAL COUNSEL PLC*
*www.olcplc.com*

**INTRODUCTION**

1.      Since the 1960s, the State of Michigan has operated a program which has seized blood samples from its youngest citizens, as newborn Michiganders less than 48 hours old, to test for various diseases.

2.      The idea—early testing for newborns—is a noble public policy idea but the method by which Michigan has opted to implement the program—and then morph the objectives into more—violates the United States Constitution.

3.      In short, the State of Michigan failed to obtain express or informed consent from the newborn and/or his/her legal guardian, or to secure a warrant from a neutral, detached magistrate before taking the blood into the permanent custody of and permanent detention by the state government.

4.      Parents, including these parents in this legal action, had no knowledge of blood or blood spots being drawn from their newborn child while their precious new addition to their family was in the care of hospital staff which were then being turned over the government for its permanent custody and/or permanent seizure, and use by said government or those third parties granted possession/custody.

2

5.     It has been well-established that drawing a person's blood for analysis constitutes a search within the meaning of the Fourth Amendment. *Birchfield v North Dakota*, 136 S Ct 2160, 2173 (2016).

6.     The Fourth Amendment of the United States Constitution guarantees the right of persons to be secure against unreasonable searches and seizures by the government, including the State of Michigan, its agencies, and those that work for or in cahoots with those agencies.

7.     And in the absence of consent, a court order, or an exception the warrant requirement, the search and seizure is *per se* unreasonable and unconstitutional.

8.     It has been well-established that citizens, even our youngest, have the constitutionally protected liberty interest in approving or refusing unwanted medical procedures under the doctrine of informed consent, *Cruzan v Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990).

9.     These blood tests are constitutionally invasive as the tests "require piercing the skin" and "extract a part of the subject's body," see *Birchfield, supra.*

10.    Moreover, once the alleged testing is finished, the sued state agency and its officials do not destroy the taken samples but instead *indefinitely* store the leftover blood spots in a temperature and humidity-

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

controlled facility on or near the campus of Wayne State University and/or a warehouse in Lansing for future unspecified uses.

11.    These Defendants operate or have putative control over the Infants' blood samples after the completion of the newborn screening tests under the program names of Michigan BioTrust for Health and/or the Michigan Neonatal Biobank.

12.    According to recent disclosures seeking records of requests from any or all law enforcement agency or agencies seeking blood sample(s) or spot(s) and/or information deriving/extracted from blood sample(s) or spot(s) held by the Michigan BioTrust for Health, the Michigan Department of Health and Human Services indicated that twenty-two (22) forensics requests were proffered.

13.    There are no state statutory protections against the State of Michigan, its agencies, its officials, police officers, or accessible users against these persons/entities for using the blood samples for other purposes.

14.    This entire process violates the United States Constitution and must be ordered stopped in the absence of consent, the samples illegally taken be destroyed (in the absence of retroactive consent), and appropriate

reimbursement of losses to be paid by those who stole the blood of millions of newborn children.

## PARTIES

15.     Plaintiffs ADAM KANUSZEWSKI and ASHLEY KANUSZEWSKI are the parent-guardians and next friend to their minor children:

    a.  D.W.L., date of birth 01/17/2008

    b.  R.F.K., date of birth 04/22/2013

    c.  C.K.K., date of birth 02/10/2016

16.     Plaintiff SHANNON LAPORTE is the parent-guardian and next friend to her minor children:

    a.  M.T.L., date of birth 10/19/2008

    b.  E.M.O., date of birth 02/06/2017

17.     Plaintiff LYNNETTE WIEGAND is the parent-guardian and next friend to her minor children:

    a.  L.R.W., date of birth 11/21/2011

    b.  C.J.W., date of birth 07/17/2013

    c.  H.J.W., date of birth 12/24/2014

    d.  M.L.W., date of birth 01/30/2017

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

18.   The plaintiff-children identified via acronyms above are collectively referred to as the "Infants"; their parent-guardians are collectively referred to as the "Parents."

19.   Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES is a state agency formed under the laws of the State of Michigan with its principal office is located at 333 S. Grand Avenue, Lansing, Michigan.

20.   Defendant NICK LYON is the director of MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES and is sued in his official and individual capacities while acting under the color of law.

21.   Defendant DR. SANDIP SHAH is the director of the Bureau of Laboratories within the MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES and is sued in his official and individual capacities while acting under the color of law.

22.   Defendant DR. SARAH LYON-CALLO is the state epidemiologist and director of the Bureau of Epidemiology and Population Health and serves as manager of Michigan BioTrust for Health, and is sued in her official and individual capacities while acting under the color of law.

23.   Defendant MARY KLEYN is the manager of the Newborn Screening Section within the MICHIGAN DEPARTMENT OF HEALTH AND

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

HUMAN SERVICES and is sued in her official and individual capacities while acting under the color of law.

24.    Defendant MICHIGAN NEONATAL BIOBANK, INC (also known as MICHIGAN NEONATAL BIOREPOSITORY) is a domestic non-profit entity formed under the laws of the State of Michigan and is, by operation of law, a state actor subject to the limitations and prohibitions of the United States Constitution; its principal office is located at 440 Burroughs St, Detroit, Michigan on or near the campus of Wayne State University;

25.    Defendant DR. ANTONIO YANCEY is the director of the MICHIGAN NEONATAL BIOBANK and is sued in his official and individual capacities while acting under the color of law.

## JURISDICTION

26.    This is a civil action brought pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief together with monetary damages against Defendants for past and ongoing violations of the Fourth and Fourteenth Amendments of the United States Constitution.

27.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343, which authorizes federal courts to hear civil rights cases; and

28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act.

28. Venue is proper in this Court as Defendants conducts business and/or committed constitutional violations in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

29. Plaintiffs in this action are each the parents-guardians of one or more children born in the State of Michigan.

30. Since at least 1987 (but perhaps earlier), certain Defendants (or their predecessors) have, individually or in conspiratorial agreement, routinely and unlawfully caused the illegal collection of samples of blood from all or nearly all newborn babies in Michigan at the time of birth and stored those samples or "spots" indefinitely for purposes of testing and later research unrelated to the purposes for which the infants' blood was originally drawn, without the knowing and/or informed consent of the Parents.

31. The currently named Defendants continue to do so today, individually and by joint operation.

32. At the time the birth of each Infant, a health professional in charge of the care of each newborn infant or at the birth of an infant was conscripted by Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES to cause a needle or other skin-piercing device to

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

breach the outside skin of the newborn Infants to extract five or six samples of blood, known as blood spots.

33.    The health professional in charge of the care of a newborn infant or at the birth of an infant was forced to do so because his or her failure would have or could have caused the health professional to be jailed pursuant to MCL 333.5431 as a criminal misdemeanor.

34.    Each Parent was, at the time of the extraction of blood spots, unaware that health professional was taking their child's blood for the purpose of providing the blood spots to the state government when the statute only requires certain "health professional[s]" to "administered to the infant a test" for certain diseases, see MCL 333.5431(1).[1]

35.    The Parents did not reasonably understand, were not reasonably told, or did not give expressed informed consent to the State of Michigan to

---

[1] Interestingly, Michigan law only requires the health care professional to "administered to the infant a test" to detect certain diseases in newborns. MCL 333.5431(1). Michigan law does not require the State of Michigan or its laboratories to be the entity that ultimately performs the tests. However, the State, by these Defendants, have misused and misapplied the statute in an unconstitutional manner to *require* a massive dragnet scheme, undertaken without consent, for the extraction of blood spots and turning over those samples to the government for all newborn infants, and later causing the indefinite seizure and storage of the blood spots as if the State's own property. So, while the statute itself might (and that is not a foregone conclusion) pass constitutional muster, its interpretation and application by these state actors does not.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

authorize its agents and/or the conscripted health professionals to take their respective Infants' blood for the purpose of providing the blood spots to the government.

36.     Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, by and through its conscripted or regular agents/officials/employees, illegally and unlawfully pierced the skin of the Infants for the purpose of extracting a part of each Infants' body for testing in a government laboratory without a warrant signed by a neutral and detached magistrate, consent of the Parents, or lawful authorization under state or federal law.

37.     The Infants' blood spots are seized 24-48 hours post-birth on a filter paper collection device created and compelled for use by Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, see **Exhibit B**.

38.     This filter paper collection device is known the Dried Blood Spot ("DBS") card.

39.     Defendant NICK LYON personally authorized and/or acquiesced to this illegal and unlawful violation of the Infants' constitutional rights and has taken no steps to stop the unlawful process individually or in his role as

Director of Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, see **Exhibits D and E**.

40.    The Parents are also charged a fee, usually more than $100.00, for the cost of Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES undertaking the seizing, storage, and testing of the blood spots of their respective Infants.

41.    After searching and seizing the blood drops from Infants 24-48 hours post-birth, Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES demands delivery of and are transmitted the blood spots which become in the possession of the Bureau of Laboratories with the Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES under the custody and control of Defendants DR. SANDIP SHAH, DR. SARAH LYON-CALLO, and/or MARY KLEYN.

42.    By and through its laboratory technicians within Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES and under the authority of Defendants NICK LYON, DR. SANDIP SHAH, DR. SARAH LYON-CALLO, and/or MARY KLEYN, tests, which were not consented to be undertaken, are conducted to detect and learn of any maladies, disorders, or diseases.

43.    A list of maladies, disorders, or diseases sought to be detected is attached as see **Exhibit B**.

44.    No defendant and no laboratory technician at Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES obtained or secured the informed and/or lawful consent of the Infants or their Parents to conduct these tests.

45.    No defendant and no laboratory technician at Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES provided reasonable notice or explanation to the Infants or their Parents to seek informed consent to conduct these tests.

46.    Regardless of whether those blood spots had tested positive for any of the 50+ maladies, disorders, or diseases, Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES retained the remaining blood spots indefinitely via an arrangement with Defendant MICHIGAN NEONATAL BIOBANK.

47.    On information and belief, every Infant in this legal action has the seized blood spots on the DBS cards stored by Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES in Lansing, Michigan and/or Defendant MICHIGAN NEONATAL BIOBANK in Detroit, Michigan.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

48.    At no point were the Parents ever presented with the option to simply opt out of the blood draw *before* it occurred, the seizure of blood spots via the DBS cards, the medical testing, or otherwise.

49.    At some point during the birth of the Infants, the Parents might have been presented with a card giving the Parents an option of whether they want their Infants' *already* illegally seized and tested blood to be donated to medical research.

50.    On information and belief, the Parents did not provide this consent, and if they did so sign such a document they had an insufficient understanding of the form they were forced to sign.

51.    After testing is complete, the Infants' blood spots are transferred to Defendant MICHIGAN NEONATAL BIOBANK under the custody and control of Defendant DR. ANTONIO YANCEY.

52.    In addition to the blood spot samples, Defendants, individually or collectively, require the submission of certain data about the blood spots and also other private personal information including the Infants' names, genders, weight, gestation time, and whether transfused with red blood cells and whether part of a single or multiple-newborn birth (i.e. twins, triplets).

53.    A sample of that form looks like this:

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com



54. Despite claiming that the Infants' identities are decoupled from the blood spot samples for "privacy," Defendant MICHIGAN NEONATAL BIOBANK readily and publicly admits that it is easily possible to request and break the blind causing the private medical and genetic information of the Infants to be revealed.

55. As of current, there are no statutory legal protections on who may access, use, or utilize the private medical and genetic information of the Infants which is obtainable through blood and blood-based testing, see MCL 333.5431.

56. Defendant MICHIGAN NEONATAL BIOBANK and Defendant DR. ANTONIO YANCEY indefinitely store the Infants' blood in a temperature and humidity controlled facility in an area in or near Wayne State University

14

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

known as Tech Town as willful participants in joint action with the State and/or its agents, including for and on behalf of Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES and the other individual state defendants named herein.

57.    The DBS cards containing the seized dried blood spots of Infants are stored in archival boxes and are under the custody and control of Defendant MICHIGAN NEONATAL BIOBANK and/or Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES.

58.    On information and belief, the current DBS inventory exists of over five million residual newborn blood spot specimens representing nearly every Michigan birth since at least October 1987, but on information and belief as early as 1984.

59.    Defendant MICHIGAN NEONATAL BIOBANK receives all or nearly all its funding from the State of Michigan to indefinitely store the Infants' blood and to conduct tests on the Infants' blood including for medical studies, laboratory equipment calibration, and other uses not provided for by State law or with the consent of the Infants or their Parents.

60.    According to Defendant MICHIGAN NEONATAL BIOBANK, "over 160 biomarkers and compounds have been measured in seized dried blood spots, from DNA and proteins to metals and infectious agents."

15

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

61.   Since the blood spots contain deeply private medical and genetic information, the Parents are concerned and fear about the potential for misuse of that information and fear the possibility of discrimination against their Infants and perhaps even relatives through the use of such blood samples and research activity thereon.

62.   The Parents are concerned and fear that Michigan statutory law provides no legal protections from invasion or use by courts, law enforcement, state actors, or private actors who gaining access to the blood spot collections and DBS cards held by Defendant MICHIGAN NEONATAL BIOBANK.

63.   For purposes of this case, the Infants, by their Parents, allege that Defendant MICHIGAN NEONATAL BIOBANK is a state actor or is otherwise liable via civil conspiracy under 42 U.S.C. § 1983 despite being formed as a non-profit domestic corporation.

64.   For purposes of this case, the Infants, by their Parents, allege that Defendant DR. ANTONIO YANCEY is a state actor or is otherwise liable via civil conspiracy under 42 U.S.C. § 1983 by his role as director of Defendant MICHIGAN NEONATAL BIOBANK.

65.   Defendants NICK LYON, DR. SANDIP SHAH, DR. SARAH LYON-CALLO, and/or MARY KLEYN directed or otherwise approved of the

conscripted doctors' conduct and the conduct those under their command within the Department who commit violations of the US Constitution, see e.g. **Exhibits D, E, and F**.

**COUNT I**

**FOURTH AMENDMENT VIOLATION - 42 U.S.C. § 1983**

**INITIAL EXTRACTION AND SEIZURE FOR TESTING**

**(EXCLUDING DEFENDANT BIOBANK AND DR. ANTONIO YANCEY)**

66.   The prior allegations are alleged word for word herein.

67.   The search of an Infant for the seizure of their blood spots for testing purposes, without the consent of the Infants or their Parents, is an unlawful and unconstitutional search and/or seizure under the Fourth Amendment to the United States Constitution when done at the direction of or acquiesced to by the state Defendants.

68.   The relevant Defendants failed to have any consent or a warrant signed by a neutral and detached magistrate to cause a needle or other skin-piercing device to breach the outside skin of the newborn to extract five or six blood drops and seize those blood spots for testing and use by the government.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

69.     Defendants' actions, done under the color of law, intentionally and wantonly deprived the Infants of their right to be free from unlawful search and seizure as it applies to their own blood.

70.     All Infants have experienced constitutional harm by the illegal and unlawful processes and procedures undertaken and/or the same is a policy, custom, and/or practice of Defendants.

71.     The conduct of Defendants was reckless and undertaken with complete in indifference to the Infants' federal rights to be free from violations of the Fourth Amendment to the United States Constitution.

**COUNTS II & III**

**FOURTH AMENDMENT VIOLATION - 42 U.S.C. § 1983**

**PLUS CIVIL CONSPIRACY UNDER § 1983**

**INDEFINITE SEIZURE AND STORAGE**

**(ALL DEFENDANTS)**

72.     The prior allegations are alleged word for word herein.

73.     The indefinite seizure of the blood of the Infants, for no reasonable and rationale basis undertaken without the actual and informed consent of the Infants or their Parents, is an unlawful and unconstitutional seizure under the Fourth Amendment to the United States Constitution.

74.    Defendants failed to have any consent or a legally-obtained judicial warrant signed by a neutral and detached magistrate to indefinitely test, keep, store, and use the blood of the Infants by the government.

75.    Defendants' actions, done under the color of law, intentionally and wantonly deprived the Infants of their right to be free from unlawful and ongoing seizures as it applies to their own blood.

76.    Defendants' actions were done individually and also via a plan with shared general conspiratorial objectives to deprive the Infants of their constitutional rights to be free from illegal seizure under the Fourth Amendment in the form of an overt act of indefinitely causing the leftover blood from the Newborn Screening program to be seized and stored indefinitely by the Michigan BioTrust for Health and/or the Michigan Neonatal Biobank in either Lansing, Detroit, or both locations.

77.    Infants have experienced constitutional harm by the illegal and unlawful processes and procedures undertaken and/or the same is a policy, custom, and/or practice of Defendants.

78.    The conduct of Defendants was reckless and undertaken with complete in indifference to the federal rights of Infants to be free from violations of the Fourth Amendment to the United States Constitution.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**COUNT IV**

**FOURTEENTH AMENDMENT VIOLATION**

**42 U.S.C. § 1983**

**LIBERTY DUE PROCESS RIGHT**

**(EXCLUDING DEFENDANT BIOBANK AND DR. ANTONIO YANCEY)**

79.    The prior allegations are alleged word for word herein.

80.    The Fourteenth Amendment provides that no State shall "deprive any person or life, liberty, or property, without due process of law."

81.    The US Supreme Court has held a competent person had the constitutionally protected liberty interest in refusing unwanted medical procedures, *Cruzan v Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990).

82.    Here, the Parents were never given the choice to decide whether to accept or reject the medical procedure of the testing all or some of the 50+ maladies, disorders, or diseases.

83.    By conscripting medical professionals to take the Infants' blood for government seizures and use without informed consent of the Parents throughout the use of MCL 333.5431(2), Defendants deprived the Infants their liberty interest in their guardians self-making personal and private medical procedure decisions without due process of law.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

84.    Infants have experienced constitutional harm by the illegal and unlawful processes and procedures undertaken and/or the same is a policy, custom, and/or practice of Defendants.

85.    The conduct of Defendants was reckless and undertaken with complete in indifference to the federal rights of Infants to be free from violations of the Fourteenth Amendment to the United States Constitution.

## RELIEF REQUESTED

86.    WHEREFORE, Plaintiffs, individually and collectively, respectfully request this Court to—

a.    Enter an order, pursuant to the Declaratory Judgment Act, declaring the conduct of Defendants acting under the color of law as being unconstitutional in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution;

b.    Enter an order, pursuant to the Declaratory Judgment Act, declaring the use of coercive criminal penalties to turn over the Infants' blood instead of the medical professionals themselves conducting the required tests is not a valid substitute for constitutionally-required and/or informed consent;

c.    Enter an order, pursuant to the Declaratory Judgment Act, declaring a certain provision of the Newborn Testing Statute,

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

MCL 333.5431(2)[2], is unconstitutional in that it unlawfully self-authorizes the search and/or seizure of blood samples and spots of newborns (including these Infants) by the State without consent or a warrant, thereby violating the Fourth Amendment to the United States Constitution;

d.      Enter an order, pursuant to the Declaratory Judgment Act, declaring certain provisions of the Newborn Testing Statute, MCL 333.5431(2)[3], are unconstitutional in that it mandates both medical procedures and the automatic waiver the right to informed consent owed to the Infants and the Parents in violation of their liberty rights, thereby violating the Fourteenth Amendment to the United States Constitution;

e.      Enter an order for prospective injunctive relief to halt the illegal processes and procedures of Defendants in violation of the Fourth and Fourteenth Amendments to the United States Constitution;

---

[2] "The department may require that the tests be performed by the department."

[3] The informed consent requirements of sections 17020 and 17520 do not apply to the tests required under subsection (1). The tests required under subsection (1) shall be administered and reported within a time and under conditions prescribed by the department. The department may require that the tests be performed by the department.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

f.   Enter an order for prospective injunctive relief to halt continued possession and retention of all blood samples and spots of the Infants by any or all Defendants which they, individually or collectively, caused to be seized and stored indefinitely without informed consent;

g.   Issue a prospective injunction, commanding Defendants to destroy all data collected or extracted regarding the Infants, and return to the Parents all blood samples and spots of the Infants, which Defendants have caused to be seized and stored indefinitely without informed consent;

h.   Issue a prospective injunction, commanding Defendants to advise the Parents for what purposes Defendants are or have been used the blood samples and spots of the Infants and permanently enjoin any on-going or planned use of the Infants' blood samples and spots which Defendants have caused to be seized and stored indefinitely without informed parental consent;

i.   Enter an order for damages in the amount of all damages, including nominal damages and full refunds of all expropriated fees taken from the Parents, with interest, obtained by Defendants by its illegal actions, to the extent not prohibited

pursuant to the Eleventh Amendment to the United States Constitution;

j.      Enter an order for an award of punitive damages for each Infant and/or their Parent to the extent not prohibited pursuant to the Eleventh Amendment to the United States Constitution;

k.      Enter an order for an award of actual reasonable attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988 and all other applicable laws, rules, or statutes; and

l.      Enter an order for all such other relief the court deems equitable and/or just.

## JURY DEMAND

87.     For all triable issues, a jury is hereby demanded.

Date: February 17, 2018                RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
Counsel for Plaintiffs
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com