# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ADAM KANUSZEWSKI, et al,
    *Plaintiffs*,

       v.

MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN
SERVICES, et al,
    *Defendants*

_____/

Case No.: 18-cv-10472

Hon. Thomas L. Ludington,
District Court Judge

Hon. Patricia T. Morris,
Magistrate Judge

PHILIP L. ELLISON (P74117)
Outside Legal Counsel PLC
Counsel for Plaintiffs
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

JEREMY C. KENNEDY (P64821)
JEROLD LAX (P16470)
Pear Sperling Eggan & Daniels, PC
Counsel for Michigan Neonatal
BioBank Inc and Dr. Antonio
Yancey (Personal Capacity)
24 Frank Lloyd Wright Dr, #D2000
Ann Arbor, MI 48105
(734) 665-4441
jkennedy@psedlaw.com
jlax@psedlaw.com

CHRISTOPHER L. KERR (P57131)
THOMAS S. MARKS (P69868)
Assistant Attorneys General
Michigan Dept of Attorney General
Corporate Oversight Division
Attorneys for State Defendants
P.O. Box 30755
Lansing, MI 48909
(517) 373-1160

THOMAS F. CAVALIER (P34683)
Office of the General Counsel
Wayne State University
Counsel for Dr. Antonio Yancey
(Personal Capacity)
656 W. Kirby, 4249 FAB
Detroit, MI 48202
(313) 577-2268
thomas.cavalier@wayne.edu

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

# PLAINTIFFS' RESPONSE TO CERTAIN
# STATE DEFENDANTS' MOTION TO DISMISS

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

NOW COME Plaintiffs, by counsel, and oppose the motion to dismiss filed by Defendants Nick Lyon, in his official and individual capacities; Dr. Sandip Shah, sued in his official and individual capacities; Dr. Sarah Lyon-Callo, in her official and individual capacities; and Mary Kleyn, in her official and individual capacities.[1] Dismissal as to Defendant Michigan Department of Health and Human Services is warranted due to their non-consent to suit.

Dismissal, except as to Defendant Michigan Department of Health and Human Services, should be denied for the reasons outlined in the attached brief.

Date: July 6, 2018                RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
Counsel for Plaintiffs
PO Box 107, Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

---

[1] Plaintiffs have also sued Harry Hawkins, manager of the Newborn Screening program within MDHHS. Counsel for the State Defendants has informed the undersigned that Mr. Hawkins has since passed away. See https://www.legacy.com/obituaries/name/harry-hawkins-obituary?pid=188308512&view=guestbook.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ADAM KANUSZEWSKI, et al,
*Plaintiffs*,

Case No.: 18-cv-10472

v.

Hon. Thomas L. Ludington,
District Court Judge

MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN
SERVICES, et al,
*Defendants*

Hon. Patricia T. Morris,
Magistrate Judge

_____/

PHILIP L. ELLISON (P74117)
Outside Legal Counsel PLC
Counsel for Plaintiffs
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

JEREMY C. KENNEDY (P64821)
JEROLD LAX (P16470)
Pear Sperling Eggan & Daniels, PC
Counsel for Michigan Neonatal
BioBank Inc and Dr. Antonio
Yancey (Personal Capacity)
24 Frank Lloyd Wright Dr, #D2000
Ann Arbor, MI 48105
(734) 665-4441
jkennedy@psedlaw.com
jlax@psedlaw.com

CHRISTOPHER L. KERR (P57131)
THOMAS S. MARKS (P69868)
Assistant Attorneys General
Michigan Dept of Attorney General
Corporate Oversight Division
Attorneys for State Defendants
P.O. Box 30755
Lansing, MI 48909
(517) 373-1160

THOMAS F. CAVALIER (P34683)
Office of the General Counsel
Wayne State University
Counsel for Dr. Antonio Yancey
(Personal Capacity)
656 W. Kirby, 4249 FAB
Detroit, MI 48202
(313) 577-2268
thomas.cavalier@wayne.edu

---

## BRIEF REGARDING PLAINTIFFS' RESPONSE TO CERTAIN STATE DEFENDANTS' MOTION TO DISMISS

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## <u>QUESTIONS PRESENTED</u>

### I.
### Do Plaintiffs have standing?

Answer: Yes

### II.
### Does Defendant MDHHS enjoy certain limited Eleventh Amendment immunity due to its lack of consent?

Answer: Yes

### III.
### Have Plaintiffs pled plausible Fourth and Fourteen Amendment claims?

Answer: Yes

### IV.
### Is qualified immunity not available to the individual State Defendants?

Answer: Yes

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## MOST RELEVANT AUTHORITY

### Standing

*In re Certification of Questions of Law*, Case No. 18-01 (FISCR 2018)
(*available at* https://bit.ly/2MQ41nG)

*Campbell v. Minneapolis Pub. Hous. Auth.*, 168 F.3d 1069 (8th Cir. 1999)

Fed. R. Civ. P. 17(c)

### Eleventh Amendment Immunity

*Boler v. Earley*, 865 F.3d 391 (6th Cir. 2017)

*Lewis v. Clarke*, 581 U.S. __; 137 S. Ct. 1285 (2017)

### Plausibility of Claims

U.S. Const. am. IV & XIV

Fed. R. Civ. P. 8(a)(2) *with* Fed. R. Civ. P. 12(b)(6)

*Dubbs v. Head Start, Inc.* 336 F.3d 1194 (10th Cir. 2003)

### Qualified Immunity

*Dubbs v. Head Start, Inc.* 336 F.3d 1194 (10th Cir. 2003)

*Beleno v. Lakey*, 2009 U.S. Dist. LEXIS 140243;
2009 WL 10699345 (W.D. Tex. 2009)

*Hope v. Pelzer*, 536 U.S. 730 (2002)

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## OPPOSITION BRIEF

Every time the Government is called upon to defend its unconstitutional actions, it tries to paint the circumstances in a prettier picture by blaming or lowering the challengers, trumpet how otherwise great the challenged program actually is, or argue how much 'good faith' the offending officials had when the violations occurred. This case is no different. However, the State Defendants hope that by upselling the greatness of the Newborn Screening Program's *outcomes* that this Court misses the illegality of the *process* they are undertaking to get there. But the problem is clear: the entire Newborn Screening Program (NSP) forgot to include a major legal and constitutional obligation—***consent***. "Our notions of liberty are inextricably entwined with our idea of physical freedom and self-determination." *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 287 (1990)(O'CONNOR, J., concurring). The State Defendants have stolen or impinged that right of consent by replacing their judgment for the parents' self-determination—and this is not allowed under our Constitution no matter how great the outcomes of the NSP are. The ends do not justify the unconstitutional means.

## FACTS

Because this matter comes before this Court on a motion to dismiss under Rule 12(b)(6), all the allegations in the First Amended Complaint are

deemed true and viewed in the light most favorable to Plaintiffs. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To support this brief, Plaintiffs rely on and incorporate the detailed facts pled in their First Amended Complaint. **ECF No. 26.** A brief summary is as follows.

A health professional, under threat of criminal prosecution, is required to "administer or cause to be administered" certain medical tests on newborn Michigan Infants. MCL 333.5431(1), (5); **ECF No. 26, ¶40.** Pursuant to MCL 333.5431(2), MDHHS (and the certain officials sued therein) required conscripted healthcare professionals to extract blood from Michigan newborns 24-48 hours post-birth by invasively piercing the skin of the newborns and extracting a part of the newborns' tiny body in the form of six blood spots to conduct testing. *Id.,* **¶¶35, 36, 38, 39.** But since the mid-1980s, the State demanded that it, and not the doctor, conduct certain medical tests to extract deeply private medical and genetic information/data from the 'blood spots' for the existence of certain non-communitive heredity maladies existing in a small minority of the general Michigan population. *Id.,* **¶¶35, 57.** The State Defendants also demanded certain personal data about the Infant and the mother be disclosed without consent. *Id.,* **¶¶50-51.** The Defendants never obtain consent from Infants or their Parents prior to searching and seizing the Infants' blood spots, or keeping the samples indefinitely, or

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

obtaining the personal data. *Id.,* **¶¶41, 43, 58.** They were not given the choice to simply opt-out either; the State has renounced the legal need for any informed consent. *Id.,* **¶45;** MCL 333.5431(2); see also MCL 333.17520(1). After the blood data extraction and testing was completed, the remaining Infants' blood spots are kept and then transferred to the Michigan Neonatal Biobank. *Id.,* **¶¶61, 72.** The State and its officials retain the personal and deeply-private medical and genetic information/data in government databases. Literally millions of non-consensually seized blood samples are indefinitely kept, after the completion of the all NSP testing, at both at the Biobank in Detroit and also at a MDHHS-operated warehouse in Lansing. *Id.,* **¶¶61, 77.**

The Biobank was set up by the State as a private non-profit, existing outside normal government strictures. It operates the warehouse at the Detroit facility run by Defendant Dr. Antonio Yancey. *Id.,* **¶¶75-76.** The Biobank never obtained permission or was given consent from the Parents to transfer the samples from the State to itself as a private third-party non-profit. Further, Dr. Yancey is selling the newborns' blood. **ECF No. 26-19;** see also **ECF No. 26-10; ECF No. 26-15.**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Against this entire backdrop, the Parents did not provide general or informed consent; if they did sign any such document[2] purporting to give consent, they had an insufficient understanding and thus had not been given or were provided proper legally sufficient consent. **ECF No. 26, ¶¶4, 47-49.** Plaintiffs allege Michigan law has no or little legal protections in place for these stored blood samples. *Id.,* **¶¶64, 66-69.** Even law enforcement is using the blood samples for criminal investigations and prosecutions. *Id.,* **¶¶12, 74; ECF No. 26-13.** In addition to violations of the constitutional rights of the Infants and their Parents, there is ongoing clear fear of misuse of both the blood spots, the private medical and genetic information, and of future discrimination against the Infants and perhaps even relatives through the use of such blood samples and research activity thereon. **ECF No. 26, ¶¶78-83.** That fear is today well-founded and real. **ECF No. 26-14, PageID# 375.**[3]

---

[2] Defendants, albeit improperly, attached what it purports to be consent cards as exhibits. **ECF No. 32-12.** Names are redacted but appear to only be seven of the nine children. That means there is no consent forms for at least two infant plaintiffs and their parents. Of the seven attached, two are flat denials. The remainder show that some were not given notice of the brochure but the consent allegedly given is vague and limited. Plaintiffs have specifically pled that they "did not provide general or informed consent, and if they did so sign such a document they had an insufficient understanding of matters they asked/forced to sign and thus were not given proper informed consent." **ECF No. 26, ¶48**. Moreover, "[a]ny alleged public understanding as to the use of the blood spots has exceeded the limited uses presented by Defendants for vaguely defined 'research.'" *Id.,* **¶83.**

[3] See also *Privacy Concerns After Public Genealogy Database Used To ID "Golden State Killer" Suspect*, CBS NEWS, April 27, 2018, *available at* https://cbsn.ws/2jghjx2 (biodata "was his team's biggest tool").

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Interestingly, as part of the motion, the State Defendants have effectively granted, in small part, one form of relief expressly sought by Plaintiffs: to "advise the Parents for what purposes Defendants are or have been using the blood samples and spots of the Infants." **Compare *Id.*, ¶118(i) with ECF Nos. 32-13 and 32-14.** But because the Infants' samples are stored <u>*at the Biobank*</u>, this really does not tell the Parents much of anything at all.

## STANDARD OF REVIEW

A complaint only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "A complaint need not set down in detail all the particularities of a plaintiff's claim." *Decorative Panels v. Intern. Ass'n of Machinists*, 996 F.Supp.2d 559, 568 (E.D. Mich. 2014)(LUDINGTON, J.). "Complaints initiate the litigation but need not cover everything necessary for the plaintiff to win; factual details and legal arguments come later." *Id.* (quoting *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005)). "To survive a motion to dismiss, the plaintiff need only plead sufficient factual matter... to 'state a claim to relief that is plausible on its face' meaning that we can draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014); see also *In re Duramax Diesel*

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*Litigation*, 2018 U.S. Dist. LEXIS 26543, at *16 (E.D. Mich. 2018)(LUDINGTON, J.)(same). In other words, the complaint must show it is plausible (but not necessarily guarantee) that the State Defendants are liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A Rule 12(b)(6) motion is not a Rule 56 motion. Instead, this Court must accept the complaint's factual allegations as true and then construes the complaint in the light most favorable to the plaintiffs. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). A complaint does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008). In simpler terms, "[t]he issue in reviewing the sufficiency of the complaint is not whether the plaintiff[s] will prevail, but whether the plaintiff[s] [are] entitled to offer evidence to support [their] claims." *Ruiz v. McDonnell* 299 F.3d 1173, 1182 (10th Cir. 2002). "If everything the plaintiffs allege is true, do those allegations establish an injury that the law redresses? If the answer is yes, the case continues, allowing the plaintiffs to gather evidence that *proves* to a jury, beyond a preponderance of the evidence, that the allegations in their complaint are true." *P.J. v. Utah*, 2006 U.S. Dist. LEXIS 40393; 2006 WL 1702585 (Utah 2006)(emphasis in original). Assessment of the facial sufficiency of the complaint under Rule 12(b)(6)

6

must ordinarily be undertaken without resorting to materials outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).[4] The Sixth Circuit has, in more recent years, allowed a slightly more expansive view in allowing for review of three classes of records: 1.) public records, 2.) items appearing in the record of the case, and 3.) exhibits attached to defendant's motion to dismiss. However, those classes are *conditional* and may only be considered so long as these records are *both* a.) referred to in the Complaint and b.) are central to the claims contained therein. *Bassett, supra*, at 430; *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)(same).

Rule 12(b)(1) motions attacking jurisdiction are slightly different. A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Here, the State Defendants never actually used any of the attached evidence to attack any

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

---

[4] If a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion. *Wysocki, supra,* at 1104.

particular specifically-pled fact, thus the State Defendants' merely mounted nothing more than a facial attack (and claimed otherwise to present a prettier political picture, see *supra*, at 1). When the district court essentially makes no factual findings in deciding it that lacked jurisdiction, "we will treat this as a 'facial' 12(b)(1) motion." *Id.*

## LIMITED RECORD

Given that the motion under Rule 12(b)(1) and 12(b)(6) require this Court to deem all of Plaintiffs' allegations as true and cannot consider materials outside the record, the State Defendants have improperly attached two affidavits of State employees, one a named party and the other not, plus a bunch of printouts from the State's website and the signed portions of DBS cards of only a fraction of the Infants involved in the case and does identify to which Infant the card belongs. They also attached NSP promotional and marketing publications. These materials violate the record-limiting rules of these motions. The cited materials are neither attached to the complaint nor meet the *Bassett* exceptions, and thusly cannot be considered for either portion of the motion, but especially the Rule 12(b)(6) motion.[5] As such, the near entirety of the facts section provided in **ECF No. 32** is inconsequential.

---

[5] Particularly improper are the affidavits. Affidavits are for Rule *56* motions. See Fed.R.Civ.P. 56(c)(1)(a), (4). Plaintiffs can then later oppose with its own. Fed.R.Civ.P. 56(d).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Additionally, the State Defendants cite to two websites. See **ECF No. 32, PageID# 499, 500.** Courts have questioned this practice. "Many documents in the possession of public agencies simply lack any indicia of reliability whatsoever." *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013). Use of information from such outside sources is therefore limited to only those *facts* subject to judicial notice under FRE 201. *Id.,* at 37. FRE 201 allows this Court to take judicial notice of "a fact," not a document, that is not subject to reasonable dispute. FRE 201(b)(1)-(2). In this case, the State Defendants never requested this Court to take such judicial notice of any particular *fact*. Had they done so properly, Plaintiffs would then timely request "to be heard on the propriety of taking judicial notice and the nature of *the fact* [not the document] to be noticed." FRE 201(e). However, to the extent this Court would desire to use any fact from a document or website outside of the record, Plaintiffs object and demands to be heard on the propriety of taking any judicial notice. *Id.*

## ARGUMENT

### I.   STANDING

As has been the common place in civil rights litigation, the State Defendants challenge Plaintiffs' standing. "[T]he standing inquiry requires

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). "For Article III standing purposes, then, the plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen, supra*, at 751. All three easily are met.

Standing gets confused with success on the merits, even by seasoned litigators. *In re Certification of Questions of Law*, No. 18-01 (FISCR 2018) (*available at* https://bit.ly/2MQ41nG), at *10-15. We all know the established standard for standing: a suffered "injury in fact" via a "concrete and particularized" invasion of a legally protected interest; a "causal connection between the injury and the conduct complained of;" and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Yet, it is crucial not to conflate Article III's requirement of standing with a plaintiff's potential causes of action. *In re Certification, supra.* "[T]he ultimate merits of the case have no bearing on the threshold question of standing." *Campbell v. Minneapolis Pub. Hous. Auth.*, 168 F.3d 1069, 1074 (8th Cir. 1999). Instead, "standing is generally an inquiry about the plaintiff: is this the right person to bring this claim?" *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016). The fundamental aspect of standing is that it focuses on the party seeking to get

his complaint before a federal court and not on the issues he wishes to have adjudicated. *Flast v. Cohen*, 392 U.S. 83, 99 (1968); see also *Gregory v. CitiMortgage, Inc.*, 890 F.Supp.2d 791, 797-798 (E.D. Mich. 2012).

> ### A.    The Infants and Parents Have Standing

For its first argument, it suggested that the Parents themselves lack standing to bring these claims for the Infants. "Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 74 (1976). "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority." *Id.* However, a minor must bring any lawsuit he or she has for violation of his or her constitutional rights through his/her parents or another legal representative. Fed.R.Civ.P. 17(c). This is usually the parents of a minor plaintiff. *Gonzalez v. Reno*, 86 F.Supp.2d 1167, 1185 (S.D. Fla.), *aff'd sub nom*, 212 F.3d 1338 (11th Cir. 2000). When it comes to medical-based decisions, the law long recognizes that parents speak for their minor child. *E.g. Parham v. J.R.*, 442 U.S. 584 (1979). Given all this, parents must be the ones to bring suit when those rights are invaded. Here, the State Defendants merely assert that *the parents* lack standing. That has been suggested to be true solely for the Fourth Amendment claims but has been rejected for the parental-based claims

under the Fourteenth Amendment. *Dubbs v. Head Start, Inc.* 336 F.3d 1194, 1203-1204 (10th Cir. 2003) *cert. denied*, 540 U.S. 1179 (2004). Moreover, the State Defendants' assertion seems to implicitly concede that the Infants have standing, which Plaintiffs agree. However, to assert those rights, the minors' parents must be present in the lawsuit as well. For purposes of this case, the minors' and their parents' presence in the case under the Fourth and Fourteenth Amendments must go hand-in-hand. *Dubbs, supra*, at 1204 The Parents have appeared both as parents and next friends in this case.

In the same section of their brief, the State Defendants then assert that because the Infants do not have a recognized, absolute right to have their parent or guardian make medical decisions on their behalf, the Infants suffer no injury when the State Defendants violate their constitutional rights. This argument too has been rejected under *Dubbs*. Furthermore, the Supreme Court has expressly rejected that a minor child is "the mere creature of the State." *Parham, supra*, at 602; see also *Pierce v. Society of Sisters,* 268 U.S. 510, 535 (1925). The "Supreme Court has long recognized the right of parents to the care, custody and nurture of their children as a liberty interest protected by the Fourteenth Amendment." *Doe v. Irwin*, 615 F.2d 1162, 1167 (6th Cir. 1980). And if a parent has that right, the corollary is also true—a child has a right to have his/her competent parents, and not the State, make

key decisions about his/her medical care.[6] Thus, legally-competent[7] parents, and not the State, are empowered and have the right to make decisions regarding medical procedures being undertaken upon their Infant children, and both parents and minors have standing when those rights are impinged.

## B.    Specific Conduct

Next, the State Defendants collectively argue—in one sentence—that "Plaintiffs have not alleged any personal involvement or injury that is "fairly traceable" to the *specific* conduct of any State Defendant." Again, this case is at the pleading stage and Plaintiffs have alleged that the individual defendants are all 'control-level' officials within the MDHHS who control the NSP and have been alleged to have been part of the scheme to extract a part of each Infants' body for testing without consent; obtained by seizure medical health data; and deprive the Infants and Parents their fundamental liberty interests without due process of law. **ECF No. 26, ¶¶22, 23, 24, 26, 44, 50, 88.** Heightened specificity pleading is not required. Fed.R.Civ.P.

---

[6] In *Dubbs*, the Tenth Circuit suggests that the children's interests advanced under the rubric of substantive due process are subsumed by the parents' claim and the Infants lack standing here because they have a better Fourth Amendment claim. Plaintiffs do not make this concession. But even if true, the case still continues as pled.

[7] Recognizing there are exceptions for cases of abuse or neglect, none of those things are present in this case. No parent in this case has ever had their parental rights deemed waived, forfeited, or taken.

8(a)(2), 9.[8] Moreover, liability can be assessed if the state actor directly participated merely by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself. *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). See e.g. **ECF No. 26-5**; **ECF No. 26-6**; **ECF No. 26-7**; **ECF No. 26-8**. Discovery will marshal in the needed evidence solely held by and in possession of the defendants.

### C.    Storage

Next, the State Defendants assert that they "understand Counts IV and V to relate only to storage." This is not true. This case challenges, among other things, the seizure and then the later indefinitely *test, keep, store, and use* the blood of the Infants—more than mere storage. **E.g. ECF No. 26, ¶110.** Nevertheless, they argue Infants have not "suffered injury from storage of their DBS" because their blood spots have never been used for research, or for "law enforcement purposes" or "sold" to third parties. **ECF No. 32, PageID# 509.** Counts IV and V are Fourth Amendment claims which the State Defendants misunderstand.[9] Again, the harm in this case is about

---

[8] The State Defendants also claim that Plaintiffs "appear to seek statewide relief." **ECF No. 32, PageID# 508**. No class action has been sought and the idea of "statewide relief" is not demanded. See **ECF No. 26, ¶118**. The Plaintiffs' claims rest solely on what happened and is happening to them, and not any third parties.

[9] Counts IV and V alleged two theories: direct liability and conspiracy-based liability. *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)(recognizing § 1983 conspiracy claim).

14

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

interference with legal rights in requiring consent. "It should go without saying that adequate consent is elemental to proper medical treatment." *Dubbs, supra*, at 1207. By overpassing the legal obligation to obtain consent, the State Defendants now illegally possess the Infants' blood to then undertake storage, use, and sale of the same. The wrong being challenged is the lack of consent. The undertaking of the storage, use, and sale of the Infants' blood are the *subsequent* acts not allowed when consent was not obtained *first*.[10] **ECF No. 26, ¶47.**

The State Defendants also argue a lack of standing because the Parents never requested for post-search destruction of their children's samples after the extraction. There is no legal right to the destruction of blood samples.[11] But that argument misses the point. This case is about the *ab*

---

[10] To make this easier to understand, Plaintiffs offer this analogy. The State Defendants today seize a vehicle rather than blood without consent or a warrant. They test the car for compliance with emission standards and when finding nothing then sends the car a third party private nonprofit impound lot (i.e Carbank) where it sits for an indeterminate amount of time until a future date when the government decides to use or sell the car. Arguendo there is a statute confirming no consent is required. Applying the State Defendants' argument above, there is no Fourth Amendment violation because the car is not being *then*-used by the police department or to shuttle an important official, and that the car has not yet been sold. This Court would have no problem finding the actions of the State Defendants to be an illegal search and on-going seizure. How is blood any different? See *Dubb, supra*, at 1207 (the Fourth Amendment would be violated if young children were subjected to intrusive physical examination and blood tests without consent of the parents or without a court order or without a showing of "special needs").

[11] Contrary to its assertion, Michigan's newborn screening law, MCL 333.5431, has not listed, provided, or afforded any blood spot destruction or repatriation process to destroy or return seized blood samples to parents. Moreover, Parents are never given

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*initio* illegality of the searching/seizure. The illegality still continues by the further testing and indefinite storing/selling of blood samples given the lack of proper consent. The State Defendants never should have had the Infant blood samples in the first place. The blood samples' current retention as the fruit or continuance of the illegal search can be remedied by this Court. "[W]hether an alternative remedy exists does not affect the jurisdiction of the federal court." *Horne v. Dep't of Agriculture*, __ U.S. __, 133 S. Ct. 2053, 2062 fn.6 (2013).[12]

### D.   Conclusion

Plaintiffs have standing to bring these constitutional claims.

---

the option to opt-out in the first instance because they are not afforded informed consent, i.e. knowledge of the blood draw and testing, before heel-prick tests are administered. MCL 333.5431(2)(statute purporting to waive Infants' right of informed consent); see also MCL 333.17520(1)(requiring informed consent for all genetic tests undertaken except for newborn screening tests). A policy statement is not law. E.g. *US v. Flemmi*, 225 F.3d 78, 88 (1st Cir. 2000) (a government manual or policy book "merely provides guidance… and does not have the force of law."). Courts may "not uphold an unconstitutional statute merely because the Government promise[s in policy statements] to use it responsibly." *Stevens, supra*, at 480. Trying to 'correct' an unconstitutional statute by construing it for only permissible purposes does not fix the constitutional violations. Courts may not rely on "the mercy of *noblesse oblige*" of the government to self-correct unconstitutional laws by operation of bureaucratic fiat. *Id.*

[12] The State Defendants point to *Higgins v. Texas Dep't of Health Servs.*, 801 F.Supp.2d 541, 553 (W.D. Tex. 2011). *Higgins* specifically noted the blood samples in dispute there were previously destroyed based on the statewide settlement Texas entered into a previous case (known as *Beleno*). In other words, all the samples which were collected without consent, including the minor children samples in *Higgins*, were destroyed. Michigan has not taken Texas' lead—the samples being obtained by Michigan continue to be taken *and stored* without consent for future use and sale. That is the up-the-chain challenge this case is taking. Michigan cannot rely on *Higgins* because Michigan has not voluntarily destroyed held samples obtained without consent because it still holds them today. Thusly, *Higgins* is distinguishable and irrelevant.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## II.   ELEVENTH AMENDMENT

Plaintiffs specifically sought only relief "to the extent not prohibited pursuant to the Eleventh Amendment to the United States Constitution." **ECF No. 26, ¶118**. Plaintiffs have named the Michigan Department of Health and Human Services (MDHHS) as well as five state officials in both their individual and official capacities. MDHHS has sought to dismiss itself[13] under the Eleventh Amendment. Sovereign immunity via the Eleventh Amendment protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court; this includes MDHHS. *Boler v. Earley*, 865 F.3d 391, 490 (6th Cir. 2017). There are two[14] possible exceptions to sovereign immunity in this case: (1) when the state has waived immunity by consenting to the suit; and (2) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908) applies. By its motion, it is clear that MDHHS does not consent to this suit. The *Ex Parte Young* doctrine created an immunity exception when plaintiffs bring claims for prospective relief against state officials sued in their official capacity—rather than state government department itself—to prevent future federal constitutional or

---

[13] The Eleventh Amendment provides no immunity for individual capacity claims. *Lewis v. Clarke*, 581 U.S. __; 137 S. Ct. 1285, 1292 (2017).

[14] There is actually a third exception—when Congress abrogates immunity. But federal law is clear that Section 1983 does not abrogate Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

statutory violation. *Boler, supra,* at 412. Plaintiffs have done just that. **ECF No. 26 ¶118(f)-(i).** A suit against an official in his or her official capacity is against the official's office and thus the sovereign itself. *Lewis, supra*, at 1288. So, it is a merely matter of academic nicety to seek dismissal of MDHHS completely instead of MDHHS simply acknowledging itself as already subject to this Court's jurisdiction as for prospective relief via *Ex Parte Young*. Plaintiffs had hoped MDHHS would not hide behind immunity, but since it has the legal right to do so instead attempting to actually defend the questionable government program they trumpet is so great and valuable to the public, dismissal solely as to MDHHS is appropriate but it still remains bound by this suit through its officials under the *Ex Parte Young* doctrine.[15]

## III.   INJUNCTIVE AND DECLARATORY RELIEF

Next, the State Defendants challenge the "claim" for injunctive and declaratory relief sought by Plaintiffs. **ECF No. 32, PageID# 15**. Sought injunctive and declaratory relief is a form of *relief*, not a *claim*. **See ECF No. 26, ¶118(f)-(i).** And "relief" is what is awarded <u>*after*</u> defendants are found

---

[15] It is really ironic that MDHHS demands the option of consent to decide whether to waive constitutional rights (under the Eleventh) yet is denying the same opportunity to Plaintiffs to decide whether to waive their constitutional rights (under the Fourth and Fourteenth).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

responsible when actual claims are adjudicated in Plaintiffs' favor. Challenging relief in a Rule 12(b)(6) is improperly postured.

Plaintiffs do not dispute the "well-established" four-factor test for an injunction. E.g. *Barry v. Lyon*, 834 F.3d 706, 720-721 (6th Cir. 2016). However, "*likely* to be redressed by a favorable judicial decision" is the redressability standard. *Spokeo, Inc. v. Robins*, 578 U.S. __; 136 S. Ct. 1540, 1547 (2016). This Court can "issue an injunction to prevent state officials from violating the Constitution…" *Heartland Academy Comm. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005). Damages are awardable too. Thus, redressability likelihood is easily met.[16] The question is whether Plaintiffs must prove their burden *for relief, now,* at the pre-answer stage of litigation. The State Defendants assert that "Plaintiffs cannot establish any of these [*Barry*] factors." But isn't that putting the cart before the horse when a "complaint need not set down in detail all the particularities of a plaintiff's claim?" *Decorative Panels, supra,* at 568. The State Defendants have provided no precedence which requires a party-plaintiff to plead all factual

---

[16] *Larson v. Valente*, 456 U.S. 228, 244 fn.15 (1982)("a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury.").

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

entitlement to a particular type of relief in the complaint itself to survive a Rule 12(b)(6) challenge.[17]

The same is true for declaratory relief. The Declaratory Judgment Act authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*." 28 U.S.C. § 2201(a) (emphasis added). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* Just as injunctive relief, the State Defendants have provided no precedence which requires a party-plaintiff to prove entitlement to declaratory relief in the complaint itself. The State Defendants' argument is particularly strained given that the DJA provides declaratory relief "whether *or not* further relief is or could be sought." *Id.* Plaintiffs have various remedies, **ECF No. 26, ¶118**, so redressability is met.

## IV.   FAILURE TO STATE A CLAIM

Next, the State Defendants charge that Plaintiffs fail to state a claim because Plaintiffs failed to allege with particularity what each State

---

[17] If a party has no standing for a particular claim, it follows that no possible relief can be granted. Once proven, the question becomes what relief is appropriate given the facts of a case. If no relief—ranging from damages to equity—is ever possible, there might be a redressability question. However, a wrong without a remedy is unacceptable anomaly in the law. *Peck v. Jenness*, 48 U.S. 612, 623 (1849). If there be an admitted wrong, the courts will look far to supply an adequate remedy. *Laughlin v. Riddle Aviation Co.*, 205 F.2d 948, 949 (5th Cir. 1953)(citing *DeLima v. Bidwell*, 182 U.S. 1 (1901)).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Defendant "specifically" did to violate Plaintiffs' liberty interests. **ECF No. 32, PageID# 515.** Again, this is a clear misunderstanding of the posture of this case and the role of Rule 12(b)(6) motions. Plaintiffs do not need to plead "with particularity" what "specifically" was done by each defendant. *Decorative Panels, supra,* at 568. We are at the pleadings stage and only a "short and plain statement of the claim showing that the pleader is entitled to relief" is required. Fed.R.Civ.P. 8(a)(2). Frankly, Plaintiffs do not know what each defendant "specifically" did but discovery will bear that out. However, each Defendant works and is part of the NSP testing which Plaintiffs have alleged be an illegally search and seized of the blood spots of the Infants in violation of the Fourth and Fourteenth Amendments.  Plaintiffs have alleged that each Defendant was part of a common scheme to deny the right to decide whether "to accept or reject the medical procedure of the testing as to all or some of the 50+ maladies, disorders, or diseases *prior* to a piercing device breaching the outside skin of newborns to extract five or six blood drops and seize those blood spots for medical testing and use by the government." These acts thereby deprived "the Infants their liberty interest in their guardians self-making personal and private medical procedure decisions without due process of law." **ECF No. 26, ¶87-88.** "[A]t this stage, [Plaintiffs are] not required to prove that [their] constitutional rights have in

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

fact been violated" under a liberty due process claim. *Teasel v. Laskowski*, 2017 U.S. Dist. LEXIS 206174, at *15 (E.D. Mich. 2017)(LUDINGTON, J.) They are "simply required to allege, via well-pleaded factual allegations, that a legally protected interest… has been invaded." *Id.* Plaintiffs have done that here. Discovery will bear out the facts of this secret program being run outside the knowledge and understanding of Michigan parents and their infants. **ECF No. 26, ¶4**.

**V.    INDIVIDUAL CLAIMS**

**A.    Pleading Requirements**

The State Defendants continue the prior argument as to demanding heightened-specificity pleadings as to the individual-capacity claims. They falsely assert "plaintiff[s] must <u>allege</u> 'with particularity' 'what *each* defendant did to violate the asserted right'" citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)(underlining added). This is not the rule. *Terrance* was reviewed following a Rule 56 motion, not a Rule 12(b)(6) motion. So while Plaintiffs do have this burden ultimately *after discovery*, this is not their burden at the *pleading* stage. Again, only a "short and plain statement of the claim showing that the pleader is entitled to relief" is required. Fed.R.Civ.P. 8(a)(2).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

### B.    Fourteenth Amendment

### 1.    A Liberty Interest Exists

At last, the State Defendants attempt to attack the merits of Plaintiffs'

Fourteenth Amendment claims. **ECF No. 32, PageID# 516.** They argue—

> Plaintiffs provide no authority showing that a child has a fundamental
> right or liberty interest in having a parent or guardian make medical
> decisions on their behalf, or more specifically in having the parent
> refuse minimally invasive and potentially life-saving medical care.

**ECF No. 32, PageID# 518.** First, Plaintiffs do not need to "provide authority"

in their pleadings. Fed.R.Civ.P. 8(a)(2); *Decorative Panels, supra,* at 568.

Nevertheless, the foremost authority is *Cruzan*, which held that a competent

individual has a constitutional right to refuse any medical testing or treatment

as a protected liberty interest under due process. *Cruzan*, *supra*, at 278. As

for being at infant age, "[m]inors, as well as adults, are protected by the

Constitution and possess constitutional rights." *Planned Parenthood*, *supra*,

at 74. Competent parents, not governmental officials, speak for and are

empowered to make decisions for their minor children in matters of medical

treatment. *Parham, supra*, at 603; *Pierce v. Society of Sisters,* 268 U.S. 510,

535 (1925). The State does not *ipso facto* assume *parens patriae* status over

every child in Michigan.[18] The Supreme Court has long (and expressly)

---

[18] "The statist notion that governmental power should supersede parental authority
in all cases because some parents abuse and neglect children is repugnant to American

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

rejected that a minor child is "the mere creature of the State." *Parham, supra*, at 602. The right to decide how to bring up a child—which includes medical decisions—is a well-established *fundamental* constitutional right. E.g. *Pierce, supra,* at 534-535; *Meyer v. Nebraska*, 262 U.S. 390, 399-401 (1923); *Parham, supra*, at 603; *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000).[19] "The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972). "This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Id.* "It is cardinal… that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom includes preparation for obligations the state can neither supply, nor hinder." *H.L. v. Matheson*, 450 U.S. 398, 410 (1991). "Constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society." *Ginsberg v. New York*, 390 U.S. 629,

---

tradition." *Parham, supra*, at 602-603. "[H]istorically it has recognized that natural bonds of affection lead parents to act in the best interests of their children." *Id.*, at 602.

   [19] "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children— is perhaps the oldest of the fundamental liberty interests recognized by this Court... [W]e have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children."

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

639 (1968). Impingements on fundamental rights must survive heightened strict scrutiny review. *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000).

The closest and nearly on-point analogous case applying these principles is *Dubbs*. In *Dubbs*, various government and private actors (working as and with state actors) brought inter alia Fourth and Fourteenth Amendment claims when children in a head start school program were subject to physical exams, including blood tests, without parental notice or consent. The parents maintain that the exams (including the blood tests) compromised: 1) their children's right to refuse medical treatment; and 2) the parents' own fundamental liberty interest in the care, custody and management of their children. They claim that these rights are protected under the doctrine of "substantive due process" under the Fourteenth Amendment. The district court dismissed the claims concluding the violation did not shock the conscience of the court. The Tenth Circuit reversed. The appellate panel "questions" the district court's rationale for dismissing these claims, for two reasons. *Id.*, at 1202. First, the district court over-depended on the vague consent form in the school files which did not obtain full and complete consent. *Id.* Second, the shock-the-conscience test was the wrong constitutional test in this type of case. *Id.*, at 1203. As to the latter, the panel explained that these types of actions involving the lack of parental consent

fit in the "more categorical protection for 'fundamental rights' as defined by the tradition and experience of the nation." *Id.* It was confirmed that "the right to consent to medical treatment for oneself and one's minor children—may be 'objectively, deeply rooted in this Nation's history and tradition'" and thus "it is not implausible to think that the rights invoked here — the right to refuse a medical exam and the parent's right to control the upbringing, including the medical care, of a child — fall within this sphere of [fundamental] protected liberty." *Id.* If the right being impinged is fundamental, its challenge is reviewed under strict scrutiny. E.g. *Craigmiles v. Giles*, 312 F.3d 220, 223 (6th Cir. 2002). "To survive strict scrutiny, the regulation must serve a compelling state purpose and be narrowly tailored to achieving that purpose." *Id.*  This is why the State Defendants' assertion of not being "conscience-shocking or irrational that Michigan, like every other State, runs a newborn screening program and recognizes its importance to public health" is legally erroneous. **ECF No. 32, PageID# 518**. Those are the wrong tests per *Dubbs*.

Thusly, to assert that there is no plausible authority (to survive a Rule 12(b)(6) challenge) supporting the existence of a liberty interest—whether fundamental or otherwise—as to a child having a parent or guardian make medical decisions on his or her behalf is both meritless and borders on

frivolous under the prior precedence of *Cruzan* together with *Parham*, *Pierce*, *Meyer*, *Yoder*, *Ginsberg*, and *Matheson* and as applied in *Dubbs*.[20]

### 2. Consent Is the Issue

Not to throw in the towel, the State Defendants next suggest that "even if such a fundamental right exists, the initial heel stick at issue is minimally invasive and there is an available avenue to request destruction of the samples." This fails strict scrutiny. Infants and their parents have alleged a legally protected interest via a liberty interest in making their own medical decisions, see *Birchfield, McNeely,* and *Cruzan, supra*, and Defendants are wrongfully invading the same. However, the State Defendants misconstrue the wrong being challenged in this case; such blood draws (as medical testing) never should have been taken *in the first place* in the absence of consent from the parents. A policy-based, post-violation procedure does not correct the wrong. Moreover, the question is not whether the blood draw was authorized by a state statute or are/are not minimally invasive; it is whether a state statute and self-made scheme allowing for medical decisions and testing to be accomplished without the consent of the Infant vis-à-vis his or

[20] But even if Court concludes contrary to *Dubbs* that such a *fundamental* right has not been found yet, this case is asserting the same and the prior precedence makes the argument easily plausible—which is all that is required at the pleading stage of a case. *Twombly, supra*, at 555; see also Rule 11(b)(2).

27

her Parents violates the Infant's (or Parents') constitutional right to refuse any medical testing or treatment (or its corollary of the obtainment of informed consent), in the first instance, from government officials in the face of lack of consent. Plaintiffs plainly allege the same is not constitutional. It fails under strict scrutiny or any other review level provided under *Cruzan*.

### 3.   Misapplying *Jacobson*

Just like the Biobank, the State Defendants place too much weight on the holding of *Jacobson*—it is simply not applicable in this case. *Jacobson* held that in a public health emergency a local board of health could require vaccinations, over objections, when it was necessary for the public health or the public safety. However, nearly 85 years later, the Supreme Court explained a competent person (as extended to children per *Parham*, *Pierce*, *Meyer*, *Yoder*, *Ginsberg*, and *Matheson*) has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan, supra*, at 278.[21] Reading the cases together, a proper distinction emerges. Laws that are intended to prevent a person from harming _others_ by disease contagion can be justified as an exercise of police power under *Jacobson*, but laws that are intended to affect only the health and well-being of _an individual_ are

---

[21] "The [constitutional] principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions." *Cruzan, supra*, at 278.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

subject to challenge as unjustified violations of liberty rights under *Cruzan*. This case falls in the latter because "[n]one of the maladies, disorders, or diseases sought to be detected [by NSP blood tests] are contagious or can spread by communitive human contact." **ECF No. 26, ¶57. I**n other words, diseases being tested for cannot spread to third parties; there is no public health crisis. *Id.* As a case involving the right to decide about one's *own* body and health (i.e. grant or withhold consent) with no effect on the general health of the remaining populace by contagion, the *Cruzan* framework applies. This is simply not a *Jacobson*-framework case.

## C.  Fourth Amendment

The State Defendants also attack the Fourth Amendment claims as not being plausible. They are correct the relief being sought is both a facial and as applied attack on the nonconsensual processes performed or otherwise encouraged, implicitly authorized, and/or acquiesced by the State Defendants. And almost immediately, the State Defendants have mis-framed the applicable jurisprudence. Luckily, *Dubbs* is available to provide guidance.

### 1.  Fourth Amendment Framework

The Fourth Amendment to the United States Constitution provides that the Government shall not violate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

and seizures." U.S. Const. amend IV. "Searches conducted without a warrant are *per se* unreasonable under the Fourth Amendment—subject only to a few 'specifically established and well-delineated exceptions.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455 (1971). The State Defendants have conceded that in these circumstances it would be impossible to obtain a search warrant to perform the blood spot extractions. **ECF No. 32, PageID# 529**. Thusly, "a warrantless search is reasonable *only if* it falls within a *recognized* exception." *McNeely*, *supra*, at 1558. The burden of proving a '*specifically* established and *well-delineated*' exception to the warrant requirement rests with the State Defendants. *U.S. v. Jeffers*, 342 U.S. 48, 51 (1951).

Bottom line—if the blood tests undertaken by the State Defendants are deemed a search (which *Dubbs* holds they are), they were unconstitutional unless they were performed with a warrant or parental consent, or fall within the 'special needs' exception to the warrant requirement. *Dubbs, supra*, at 1207. As shown, there is plausibly no available exception.

### 2.   *Attson* Is Not Applicable

The oft-repeated contention "that the Fourth Amendment does not apply in the 'noncriminal' and 'noninvestigatory' context is without foundation." *Dubbs, supra*, at 1205.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

> The Fourth Amendment protects the right of the people to be "secure in their persons" from government intrusion, whether the threat to privacy arises from a policeman or a Head Start administrator. There is no "social worker" exception to the Fourth Amendment.

*Id.* Both the State Defendants and the Biobank, like the defendants in *Dubbs*, cite to *United States v. Attson*, 900 F.2d 1427 (9th Cir. 1990) for the proposition that because the intent in collecting the data was not for law enforcement purposes the exams were not "searches" subject to Fourth Amendment protections. *Dubbs* flatly rejected that contention and counter-concluded that *Attson* is easily distinguishable for children medical testing cases.

> In *Attson*, the medical procedure was consensual; the real issue was the legality of providing the results to police. Here, the plaintiffs contend that the medical examination itself was performed without consent.

*Dubbs, supra*, at 1205. "The focus of the Amendment is thus on the security of *the person*, not the identity of the searcher or the purpose of the search." *Id.,* at 1206. As a pre-*McNeely* and pre-*Birchfield* decision, *Dubbs* correctly explains that medical exams including the blood tests, trigger Fourth Amendment protections. That conclusion becomes even stronger with the Supreme Court's more recent rulings in *McNeely* and *Birchfield.*

### 3.    Special Needs Doctrine

The only possible exemption that could be tried is "special needs."

> "Special needs" is the label attached to certain cases where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable."

> In special needs cases, the Court replaces the warrant and probable cause requirement with a balancing test that looks to the nature of the privacy interest, the character of the intrusion, and the nature and immediacy of the government's interest. *Id.*, at 2565-67.

*Dubbs, supra*, at 1212-1213. Claiming a special need for a blood draw and testing is seemingly precluded under Supreme Court post-*Dubbs* decisions in *McNeely* and *Birchfield*. The Supreme Court was forthright: "blood tests are a different matter." *Birchfield, supra,* at 2178. A blood test places in the hands of government a bodily sample that can be preserved and from which it is possible to extract information beyond its original purpose. *Id.* The process itself is a compelled physical intrusion beneath skin after piercing and extracting a part of the subject's body. *Id.*  For newborn testing (as an even more extreme use than for BAC testing), the government takes the blood to its facilities where it withdraws, by scientific extraction, highly personal information about a person's core genetic makeup, i.e. the essence of their person containing their deeply-private personal medical information. It then records and keeps that expropriated information in government files and databases. Defendants' scheme to invasively pierce the skin and extract the same without consent or a warrant involves the "most personal and deep-rooted expectations of privacy. *McNeely, supra*, at 1558. The excess blood

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

spots not used up in the NSP testing remained seized and then sent on to the Biobank (even though no Parent has approved this transfer to such a private third-party non-profit) where the spots are then indefinitely stored for uses other than newborn disease screening. Our highest court recognized that even if the government "is precluded from testing the blood for any purpose other than [its original purpose], the potential remains and may result in anxiety for the person tested." *Id.* Thus, according to the Supreme Court, a warrant is needed for the government to extract blood when consent is not first obtained.

But even in applying the special needs exemption to children's blood extraction and medical testing, *Dubbs* still rejects its viability. "It is plain that, if performed without the necessary consent, the searches were unconstitutional *even if we employ the 'special needs' balancing test*." *Dubbs, supra*, at 1214 (emphasis added). Even if conducting across-the-board medical tests on minors is "an effective means of identifying physical and developmental impediments in children, this supplies no justification for proceeding without parental notice and consent." *Id. Dubbs* further explained that parental notice and consent is not impracticable in this context. *Id.*, at 1215. Given this, "the 'special needs doctrine' would not excuse the failure to obtain parental consent for the examinations." *Id.*

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

33

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

### 4.    Storage and Retention

The State Defendants cursory argue that the storage and retention as a continuation of the seizure of the Infants' blood is also not a Fourth Amendment violation because the "same authority is applicable." **ECF No. 32, PageID# 523**. They suggest that the existence of anonymous numeric coding and secured facilities (without proof or factual explanation of either[22]) warrants dismissal of the claim. They also suggest that continuous involvement of the Community Values Advisory Board and Scientific Advisory Board, together with required oversight, review, and approval by the MDHHS Institutional Review Board can substitute for parental consent.[23] Both are not legally supportable as a matter of law to warrant full and complete dismissal of Plaintiffs' Fourth Amendment claims. Ongoing seizure from an original search constitutes a Fourth Amendment violation. The claim is clearly plausible.

### 5.    Civil Conspiracy

Plaintiffs have also pled a conspiracy theory claim. **ECF No. 26, Count V.** A civil conspiracy under § 1983 is "an agreement between two or more

---

[22] These assertions fall outside the pleadings and matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R.Civ.P. 56. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)

[23] See prior footnote.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Plaintiffs "ha[ve] successfully pled a § 1983 conspiracy by alleging that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis*, *supra*, at 290. "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy..." *Bazzi, supra*, at 602. This makes sense because "rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000). Thusly, a plaintiff may rely on circumstantial evidence to establish an agreement among the conspirators. *Id.*; see also *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012)(same). Moreover, each conspirator need not have known all of the details of the illegal plan or all of the participants involved to still be part of an illegal conspiracy. *Bazzi, supra*, at 602.

The individual State Defendants are all part of the NSP and have different roles to reach the constitutional outcome of overtly extracting newborns' blood without consent or a warrant by state action. Thusly, Plaintiffs have sufficiently pled a conspiracy-based Fourth Amendment theory.

### D.   Conclusion

Plaintiffs have pled plausible Fourth and Fourteenth Amendment claims. The Rule 12(b)(6) motion should be denied in full

## VI.   QUALIFIED IMMUNITY

The State Defendants assert qualified immunity under a Rule 12(b)(6) motion. Qualified immunity has two parts. The first step is to determine if the facts alleged make out a violation of a constitutional right; the second is to ask if the right at issue was clearly established when the event occurred such that a reasonable officer would have known that his or her conduct violated it. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). "This is not to say that an official action is protected by qualified immunity unless the <u>very action</u> in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be <u>apparent</u>." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(emphasis added); see also *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). General statements of law are capable of giving clear and fair warning. *Smith v. Cupp*, 430 F.3d 766, 776-777 (6th Cir. 2012). A case "directly on point" is not required. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "An action's lawfulness can be apparent from [1.] direct holdings, [2.] from specific examples described as prohibited, or [3.] from the general reasoning that a

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

court employs." *Feathers v Aey*, 319 F.3d 843, 848 (2003).  This can be established from decisions in other circuits and even secondary sources. *Barker v. Goodrich*, 649 F.3d 428, 435-436 (6th Cir. 2011).

### A.    Inappropriate At This Stage

QI is unavailable at this stage. First, it is "generally inappropriate" to seek qualified immunity via a Rule 12(b)(6) motion. *Westley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015); *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017)(same). Only truly "*insubstantial* claims against government officials should be resolved... prior to broad discovery." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). Although "qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.,* at 433-434. The fact-intensive nature of the applicable tests makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*." *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005)(Sutton, J., concurring). The qualified immunity resolution "point is usually summary judgment," not pre-answer dismissal. *Wesley, supra*, at 433-434; see also *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir.2000) (Easterbrook, J., concurring). "[T]he standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a

claim upon which relief may be granted, [and] dismissal of [the state actors] on the basis of qualified immunity is premature." *Grose v. Caruso*, 284 Fed. App'x. 279, 283 (6th Cir. 2008). Despite this standard, the State Defendants tactily concede this inquiry is "fact-specific, case-by-case basis," citing *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

### B.   Wrong Standard

The State Defendants asserted that "once qualified immunity is asserted, the plaintiff must *allege* facts sufficient to show that: (1) the official's acts violated a federal right; and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct.," citing *Barker*. Like before, that is not the holding of *Barker*, as that case was a review of decision on a Rule 56 motion after discovery had concluded. Plaintiffs acknowledge it does have the burden of *proving* at the post-discovery merits stage that the official's acts violated a federal right and the right at issue was clearly established at the time of the defendant's alleged misconduct. But this is not needed *until after discovery*. See e.g. *Horn v. City of Covington*, No. 14-73, 2015 WL 4042154, at *6 (E.D. Ky. July 1, 2015)(plaintiffs "need not make detailed factual allegations about which officer committed which act... That burden is reserved for later stages of the litigation.").

C.    **Apparentness**

It is explicit from binding Supreme Court precedence—a nonconsensual search and seizure of blood requires a warrant and failure to obtain the same is a Fourth Amendment violation. *Birchfield, supra*; see also *McNeely, supra*. But even before *Birchfield*, it is also easily apparent and clear by the direct holding and general reasoning in *Dubbs* that a search of and seizing a new child's blood without consent is unlawful and that any claims to the special needs exemption to render the search from per se warrantlessly unreasonable to reasonable is unavailable.

Same apparentness can also be said of the liberty interests under the Fourteenth Amendment. Legally-competent parents, and not the State, are empowered and have the right to make decisions regarding medical procedures being undertaken on behalf of their Infant children under *Cruzan*, *Parham*, *Pierce*, *Meyer*, *Yoder*, *Ginsberg*, and *Matheso.* To the extent that an official could not have read the multiple cases together, *Dubbs* distills the same into in a well-articulated decision providing clear general reasoning and general principles from which a reasonable official would have known its action were and are wrong. And more directly, another federal district court has found that the same Fourth and Fourteenth claims are plausible as to Texas' similar NSP law because valid claims were made against those state

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

defendants "routinely collected blood samples from all babies in Texas at time of birth and stored this blood or 'spots' indefinitely… for undisclosed research unrelated to the purposes for which the blood was originally drawn, without the knowledge or consent of the parents and "the infant blood spots contain deeply private medical and genetic information, and were expropriated without knowledge or consent." *Beleno v. Lakey*, 2009 U.S. Dist. LEXIS 140243 (W.D. Tex. 2009). Thusly, QI is not available.

## RELIEF REQUESTED

For all the reasons and law cited above, especially *Dubbs*, together with the allegations and exhibits attached to the First Amended Complaint, Plaintiffs have met their burden to provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), to make the claims plausible per *Twombly* and *Duramax Diesel Litigation*.

WHEREFORE, the motion to dismiss pursuant to Rule 12(b)(1) and (b)(6) for the reasons raised by the State Defendants in their official and personal capacities should be denied. Dismissal of MDHHS is warranted under the Eleventh Amendment by its failure to voluntarily waive immunity.

Date: July 6, 2018                    RESPECTFULLY SUBMITTED:

                                      /s/ Philip L. Ellison
                                      **OUTSIDE LEGAL COUNSEL PLC**
                                      **PHILIP L. ELLISON (P74117)**
                                      Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I, the undersigned attorney of record, hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel or parties of record.

Date: July 6, 2018

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
Counsel for Plaintiffs

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

41