UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ADAM KANUSZEWSKI and ASHLEYKANUSZEWSKI as parent guardians and next friend to their minor children D.W.L., R.F.K., and C.K.K.; SHANNON LAPORTE as parent-guardian and next friend to her minor children, M.T.L. and E.M.O.; and LYNETTE WIEGAND, as parent-guarian and next friend to her minor children, L.R.W., C.J.W, H.J.W., and M.L.W., | Case. No. :  18-10472-TLL-PTM<br><br>Honorable Thomas L. Ludington<br>Mag. Judge Patricia T. Morris |
| Plaintiffs. | |
| v. | **DEFENDANTS MICHIGAN NEONATAL BIOBANK, INC. AND DR. ANTONIO YANCEY'S MOTION FOR COSTS AND ATTORNEY'S FEES UNDER FED.R.CIV.P. 54** |
| MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES; NICK LYONS, sued in his official and individual capacities; DR. SANDIP SHAH, sued in his official and individual capacities; DR. SARAH LYON-CALLO, sued in her official and individual capacities; MARY KLEYN, sued in her official and individual capacities; MICHIGAN NEONATAL BIOBANK, INC also known as MICHIGAN NEONATAL BIOREPOSITORY; DR. ANTONIO YANCEY, sued in his official and individual capacities, | |
| Defendants. | |

1

## DEFENDANTS MICHIGAN NEONATAL BIOBANK, INC. AND DR. ANTONIO YANCEY'S MOTION FOR COSTS AND ATTORNEY'S FEES UNDER FED.R.CIV.P. 54

NOW COME the Defendants, MICHIGAN NEONATAL BIOBANK, INC. and DR. ANTONIO YANCEY in his capacity as Director of the Michigan Neonatal BioBank (collectively the "Biobank Defendants"), and hereby move that this Honorable Court award them taxable costs and attorney's fees as permitted , for the following reasons.

1.      Plaintiffs brought this action in February, filing a Complaint listing four (4) counts against the defendants, though only two (2) were made against the Biobank Defendants.

2.      In their Complaint, Plaintiffs alleged that the Biobank Defendants stored dried blood spot (DBS) cards of their minor children indefinitely, and without their consent. They further alleged that the DBS cards may be used for medical research without the consent of the Plaintiffs.

3.      The Biobank Defendants moved to dismiss the Complaint, arguing that there was no injury to the Plaintiffs or their minor children as they had the option to have the children's DBS cards destroyed but had not done so, and for some of the minor children, they would have to "Opt In" to allow the DBS cards to be used for medical research.

4.     Instead of stipulating that there was no injury and dismissing the Complaint against the Biobank Defendants, Plaintiffs doubled down, filing a First Amended Complaint which mooted the Biobank Defendants' original motion to dismiss. The First Amended Complaint added an additional count, and added additional exhibits, though the same general facts were alleged.

5.     On May 29, 2018 the Biobank Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint, arguing, among other things, the Plaintiffs lacked standing to bring a claim against the Biobank Defendants, as Plaintiffs had not suffered an actual, concrete, non-speculative injury.

6.     After Plaintiffs filed their response, the Court determined oral argument was unnecessary and granted the Biobank Defendants' motion on August 8, 2018, dismissing the case.

7.     At the time of the filing of the Complaint, and certainly at the time they filed their amendment, Plaintiffs knew that they had an avenue to have the DBS cards destroyed without having to file suit, as Exhibits B and J to the First Amended Complaint contained the procedures by which the DBS cards could be destroyed. (Ex. 1, 2).

8.     At the time Plaintiffs filed their Complaint and/or their First Amended Complaint, they knew they had not requested the destruction of the DBS cards.

9.     Furthermore, as shown by several of the exhibits to the Michigan Department of Health and Human Services' Motion to Dismiss the First Amended Complaint, the Plaintiffs signed cards either opting in or opting out of allowing medical research on the DBS cards. (Ex. 3).

10.    At the time the Complaint and/or First Amended Complaint were filed, the Plaintiffs and/or their counsel knew that they had not suffered any injury as a result of the storage of the DBS cards, and they knew that they were not entitled to injunctive relief against the Biobank Defendants, as an injunction was inappropriate due to the availability of other remedies, e.g., requesting the destruction of the DBS cards.

11.    As a prevailing party, the Biobank Defendants are permitted to tax their costs pursuant to Fed.R.Civ.P. 58(d).

12.    In any action or proceeding to enforce a provision of 42 U.S.C. §1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. 42 U.S.C. §1988.

13.    Further, it appears that the evidentiary contentions in the Complaint and First Amended Complaint did not have factual support, as demonstrated above, and therefore the Complaint and First Amended Complaint violated Fed.R.Civ.P. 11(b)(3).

14.     It also appears that that claims raised against the Biobank Defendants were not warranted under existing law, or a good faith extension of existing law, as the Plaintiffs and their counsel knew that the DBS cards could be destroyed by requesting MDHHS do so, that Plaintiffs' had no made such a request, and that they had no reason to believe the Biobank Defendants had in any was used the DBS cards of the minor children in this case in any way that was contrary to what was authorized by Plaintiffs and the law. This failure to have a claim warranted under existing law or a good faith extension of same is a violation of Fed.R.Civ.P. 11(b)(2).

15.     To date, counsel for the Biobank Defendants spent [] hours working on this case, with total incurred in legal fees amounting to []. These fees were incurred defending a case that Plaintiffs' knew had no factual basis at the time it was filed, and Plaintiff's c.

WHEREFORE the Defendants, MICHIGAN NEONATAL BIOBANK, INC. and DR. ANTONIO YANCEY in his capacity as Director of the Michigan Neonatal BioBank hereby respectfully request that this Honorable Court award them prevailing party fees, including reasonable attorney fees, in the amount of $15,000.00.

The BioBank Defendants sought concurrence in this Motion from Plaintiffs' counsel pursuant to Local Rule 7.1, but same was not obtained.

Respectfully Submitted,

PEAR SPERLING EGGAN & DANIELS, P.C.

Dated: August 23, 2018          BY:     /s/ Jeremy C. Kennedy
                                        Jeremy C. Kennedy (P64821)
                                        Attorneys for Defendant Michigan Neonatal
                                        BioBank, Inc. and Dr. Antonio Yancey in
                                        his professional capacity only

6

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ADAM KANUSZEWSKI and ASHLEYKANUSZEWSKI as parent guardians and next friend to their minor children D.W.L., R.F.K., and C.K.K.; SHANNON LAPORTE as parent-guardian and next friend to her minor children, M.T.L. and E.M.O.; and LYNETTE WIEGAND, as parent-guarian and next friend to her minor children, L.R.W., C.J.W, H.J.W., and M.L.W., | Case. No. :  18-10472-TLL-PTM  Honorable Thomas L. Ludington Mag. Judge Patricia T. Morris |
| Plaintiffs. | |
| v. | **BRIEF IN SUPPORT OF DEFENDANTS MICHIGAN NEONATAL BIOBANK, INC. AND DR. ANTONIO YANCEY'S MOTION FOR COSTS AND ATTORNEY'S FEES UNDER FED.R.CIV.P. 54** |
| MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES; NICK LYONS, sued in his official and individual capacities; DR. SANDIP SHAH, sued in his official and individual capacities; DR. SARAH LYON-CALLO, sued in her official and individual capacities; MARY KLEYN, sued in her official and individual capacities; MICHIGAN NEONATAL BIOBANK, INC also known as MICHIGAN NEONATAL BIOREPOSITORY; DR. ANTONIO YANCEY, sued in his official and individual capacities, | |
| Defendants. | |

# **TABLE OF CONTENTS**

Page

INDEX OF AUTHORITIES.............................................................. ii

CONTROLLING AUTHORITY........................................................ iii

SUMMARY OF ISSUE AND RELIEF SOUGHT ..................................iv

STANDARD OF REVIEW ...............................................................v

INTRODUCTION ..........................................................................1

ARGUMENT ................................................................................2

    A.   Basis for Awarding Attorney's Fees to the Biobank
        Defendants. ...................................................................2

    B.   Amount of the Fee .........................................................7

CONCLUSION AND RELIEF SOUGHT .............................................8

<u>INDEX OF AUTHORITIES</u>

Page

**<u>Michigan Statutes</u>**

MCL 333.5431 ...................................................................................................3

**<u>Constitutional Provisions</u>**

U.S. CONST. ART. III, § 2....................................................................................5

**<u>Federal Cases</u>**

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979)................................................7

*Bus. Guides, Inc. v. Chromatic Commc'n Enter., Inc.*, 498 U.S. 533 (1991) ...........5

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, (1978) ...................... iv, vi, 4

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)....................................5

*Croft v. Governor of Texas*, 562 F.3d 735 (5th Cir. 2009) .................................6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................... iv, 6

*m v. Stenson*, 465 U.S. 886, 888, 79 L. Ed. 2d 891 (1984)................................7

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972) .........................................7

*O'Shea* v. *Littleton*, 414 U.S. 488 (1974)...........................................................7

*Pennsylvania* v. *West Virginia*, 262 U.S. 553 (1923)..........................................7

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir.
   1996) ......................................................................................................... iv

*See Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)..................................................6

*Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) ......................5

**<u>Federal Statutes</u>**

42 U.S.C. § 2000e-5(k) ..........................................................................................4

42 U.S.C. §1988 .......................................................................................... v, 4, 9

**<u>Federal Rules</u>**

Fed.R.Civ.P. 54 ......................................................................................................v, 9

## <u>CONTROLLING AUTHORITY</u>

**Attorney's Fees Under 42 U.S.C. §1988**

- *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

- *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978)

**Standing to Bring a Claim**

- *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

## <u>SUMMARY OF ISSUE AND RELIEF SOUGHT</u>

### <u>Issue I:</u>

Are the Defendants Michigan Neonatal BioBank, Inc. and Dr. Antonio Yancey in his capacity as Director of the Michigan Neonatal BioBank, Inc. entitled to recover attorney fees under Fed.R.Civ.P. 54(d) and 42 U.S.C. §1988 when Plaintiffs and/or their counsel knew that they had not requested the dried blood spot cards at issue in this case be destroyed prior to filing suit, and thus lacked standing to bring these claims?

> Defendants Michigan Neonatal BioBank, Inc. and Dr. Antonio Yancey in his capacity as Director of the Michigan Neonatal BioBank, Inc. Answer: *Yes*
>
> This Court Should Answer: *Yes*

## <u>STANDARD OF REVIEW</u>

In any action or proceeding to enforce a provision of sections 42 USCS §§ 1981-1983 the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. Prevailing defendants are entitled to attorney's fees upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978).

## **INTRODUCTION**

Plaintiffs filed a complaint against several defendants, including the Michigan Neonatal Biobank, Inc. and Dr. Antonio Yancey, in his capacity as Director of the Michigan Neonatal Biobank, Inc. (collectively the "Biobank Defendants"), alleging the process of screening newborn babies for congenital diseases and the retention of the dried blood spot cards ("DBS cards") for future use violates the civil rights of their minor children. Plaintiffs' claims were lacking a basis in fact and were not supported by the existing law.

Further, the Plaintiffs could have – and still can – obtain part of their requested relief by simply requesting that the Michigan Department of Health and Human Services destroy the DBS cards. They did not do this before filing suit, and they did not allege the DBS cards were being used contrary to the law or the limits of any authorizations they may have made.

At a minimum, Plaintiffs' brought their claims knowing that they had no factual basis to bring them, and that the claims as pled were not supported by the existing law. Plaintiffs knew or should have known that they had no actionable claim against the Biobank Defendants. Despite this, they proceeded even after being requested to dismiss the matter. This Court correctly found that the Plaintiffs lack standing to challenge the retention of the DBS cards and dismissed the case. Accordingly, the Plaintiffs' position against the Biobank Defendants was

1

unreasonable and/or frivolous; because the Biobank Defendants prevailed in the litigation, they should be permitted recover their reasonable attorney's fees under 42 U.S.C. §1988 as part of their costs.

## **ARGUMENT**

### A.     **Basis for Awarding Attorney's Fees to the Biobank Defendants.**

Exhibit B to Plaintiffs' First Amended Complaint (ECF 26-3) is the State of Michigan Department of Community Health's Policy and Procedure on Newborn Screening Specimens, effective September 8, 2008. This document states, clearly and unambiguously, that not only can a parent or guardian request that a blood specimen not be used for research, but also that they can request that the specimen be destroyed. The policy reads in relevant part:

> The DCH will maintain, or cause to be stored, newborn screening dried blood spots indefinitely. Parents, legal guardians of, and/or persons from whom the specimen was collected after reaching the age of majority, ***may request that their specimen not be used for any research,*** by contacting DCH by telephone or mail. Parents, legal guardians of, and/or persons from whom the specimen was collected after reaching the age of majority, ***may request that their specimen be destroyed*** by providing the name, date of birth and their relationship to the individual from whom the specimen was collected and must provide copies of the individual's birth certificate and a government-issued identification (e.g., drivers license or passport) to confirm that they have authority to make such a request.
> (ECF 26-3, emphasis supplied).

Additionally, under MCL 333.5431, while DBS cards may be used for medical research, this can only be done "as long as the medical research is conducted in a manner that preserves the confidentiality of the test subjects and is consistent to protect human subjects from research risks under subpart A of part 46 of subchapter A of title 45 of the code of federal regulations." MCL 333.5431(7)(b).

Not only are there protections under Michigan law that would assuage the fears of the Parents, but under the 2008 policy they have the option to opt out and have their children's blood samples destroyed entirely. As shown in filings submitted by the State Defendants, Plaintiffs had not only failed to request destruction of the DBS cards (ECF 32-13, ECF 32-14), but they had in most cases signed cards either opting in and allowing testing to be done, or elected to prohibit use of their minor children's DBS cards for any sort of testing. (ECF 32-12).

The Plaintiffs and their Counsel, knowing what the policy was that would allow them to have the DBS cards destroyed and not electing to take that action, having no knowledge that the Biobank Defendants had in any way acted unlawfully, and having in some instances opted in to allow their minor children's blood to be used for testing purposes, pushed forward with this lawsuit.

42 U.S.C. § 1988 provides that the prevailing party in a civil rights action may recover reasonable attorneys' fees. The law reads, in relevant part:

> In any action or proceeding to enforce a provision of sections 1977, 1977A, 1978, 1979, 1980, and 1981 of the Revised Statutes [42

> USCS §§ 1981-1983, 1985, 1986], title IX of Public Law 92-318 [20 USCS §§ 1681 et seq.], the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964 [42 USCS §§ 2000d et seq.], or section 40302 of the Violence Against Women Act of 1994, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…
>
> 42 U.S.C. §1988(b).

Generally, this law is intended to incentivize attorneys to represent plaintiffs in important cases in the public interest that they might not otherwise pursue for economic reasons. It is not, however, a provision limited solely to plaintiffs. In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978), the Supreme Court considered the attorney's fees provision under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), which is virtually identical to the language of Section 1988. The Supreme Court held that while prevailing plaintiffs are entitled to attorney's fees under that statute in all but special circumstances, prevailing defendants are entitled to attorney's fees much less frequently. *See Christiansburg Garment Co.* at 417-18. "In sum," the Court held, "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421.

4

This case provides one of those rare instances where the defendants should be awarded attorney's fees. The suit was filed and signed by attorney Phillip Ellison. Required by Rule 11, the signature signals that the complaint "is to be taken seriously." *Bus. Guides, Inc. v. Chromatic Commc'n Enter., Inc.*, 498 U.S. 533, 546 (1991). It promises the Court "that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Id*. at 542. This promise serves the vital purpose of deterring baseless filings. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 292 (1990). In this case, the lawsuit, at least to the Biobank Defendants, and likely to the other defendants as well, was not well grounded in fact or in existing law or a non-frivolous extension of existing law.

A federal court may only adjudicate "cases" and "controversies." U.S. CONST. ART. III, § 2, cl. 1. The standing doctrine is derived from the case or controversy requirement and obligates plaintiffs to show a "personal stake in the outcome of the controversy as to . . . justify [the] exercise of the court's remedial powers on [their] behalf." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650, 198 L. Ed. 2d 64 (2017). To invoke the jurisdiction of the federal courts, a party must have standing under Article III. "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). These elements are (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of independent action of some third party not before the court; and (3) the likelihood that a favorable decision will redress the injury. *Id.*; *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009).

This Court found that Plaintiffs' Complaint failed to demonstrate any actual or imminent harm. In its Opinion, the Court held:

> Plaintiffs have not alleged that their blood samples were used contrary to their authorization. Plaintiffs also allege no misuse of their specific blood samples. They aver that "blood samples on several occasions were provided pursuant to state court orders . . . and being sold to third party businesses and researchers . . . As such, [Defendants] do not resist any such demands for information, including those from courts and law enforcement." Am. Compl. ¶¶ 70–71. These allegations, however, are insufficient to support article III standing, which requires Plaintiffs to demonstrate that they (and not some third party) suffered an injury in fact. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).
> (ECF 50, p. 21).

"Actual or imminent" damages require that the harm has happened or is sufficiently threatening, and not merely that it may occur at some future time. A plaintiff who has been subject to injurious conduct of one kind does not possess, by virtue of that injury, the necessary stake to litigating conduct to which he has not

been subject, regardless of how similar the harms. See *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-167 (1972). Of course, "[one] does not have to await the consummation of threatened injury to obtain preventive relief." *Pennsylvania* v. *West Virginia*, 262 U.S. 553, 593 (1923), quoted in *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979). "[The] question becomes whether any perceived threat … is sufficiently real and immediate to show an existing controversy..." *O'Shea* v. *Littleton*, 414 U.S. 488, 496 (1974). The Plaintiffs made no such showing, engaging only in speculation of possible future harm, all the while knowing that they had a simple method at their disposal to address this harm: request destruction of the DBS cards. They elected not to do so. Clearly there was no good faith basis for the lawsuit against the Biobank Defendants when Plaintiffs had such a simple remedy at their fingertips to avoid this future harm, yet elected not to use it.

B.    **Amount of the Fee**

Normally, the lodestar method is utilized whereby the amount of the fee is determined by multiplying the number of hours reasonably expended on the case by the prevailing market rates. *Blum v. Stenson*, 465 U.S. 886, 888, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984). The current hourly rate of the Biobank Defendants attorneys, $275.00, is reasonable, given the experience of their attorneys, the size of the firm handling the matter, and the fact that this case was brought in the U.S.

District Court for the Eastern District of Michigan, as the attached Exhibit 1, the State Bar of Michigan's *2017 Economics of the Law Practice* summary indicates. There was a greater than average amount of time and labor required, and the difficulty was greater than normal considering the issues involved and the tactics engaged in by the Plaintiffs, including amending their complaint in response to the Motions to Dismiss.

The attorneys for the Biobank Defendants spent a total of 104.5 hours working on this matter. The itemized billings are attached as Exhibit 2. This work was necessitated by the additional pleadings, the need to research new issues following the filing of the First Amended Complaint, and the need to review and be familiar with filings from other parties. The primary attorney working on this matter was Jeremy Kennedy. As shown in the attached Exhibit 3, Mr. Kennedy has been practicing law since 2002 and works primarily in civil litigation and real estate. (Ex. 3). His standard rate at the time this case began was $275.00 per hour. He worked 99.7 hours on this matter, and others at Pear Sperling Eggan & Daniels worked 4.75 hours. (Ex. 3).

The total attorney fee sought by the Biobank Defendants is $28,167.50.

## CONCLUSION AND RELIEF SOUGHT

Plaintiffs' First Amended Complaint against Michigan Neonatal Biobank, Inc. and Dr. Antonio Yancey was dismissed under Fed.R.Civ.P. 12(b)(6). The facts

alleged in support of the counts against the Biobank Defendants did not provide sufficient basis to demonstrate standing to bring an Article III claim. At the time the Complaint – and the later First Amended Complaint – was filed, Plaintiffs and their Counsel knew or should have known that there was no actionable injury caused by the storage of the DBS cards, nor did they even allege the DBS cards were being used contrary to written instructions from the Plaintiffs. They further knew they could have simply requested the DBS cards be destroyed, but elected not to take that action.  In short, they knew or should have known that there was no need to drag the Biobank Defendants into this case, but the elected to do so anyway, forcing them to incur thousands of dollars of needless attorney's fees. This should not be permitted, and the Biobank Defendants should be awarded attorney's fees pursuant to Fed.R.Civ.P 54(d)(2) and 42 U.S.C. §1988(b).

For the reasons stated above, the claims against Defendant MICHIGAN NEONATAL BIOBANK, INC. and DR. ANTONIO YANCEY in his capacity as Director of the Michigan Neonatal BioBank, Inc. request that this Honorable Court award them attorney fees incurred as part of their costs permitted under Fed.R.Civ.P. 54, in the amount of $28,167.50.

Respectfully Submitted,

PEAR SPERLING EGGAN & DANIELS, P.C.

Dated: September 5, 2018          BY:      /s/ Jeremy C. Kennedy                          

9

Jeremy C. Kennedy (P64821)
Attorneys for Defendant Michigan Neonatal
BioBank, Inc. and Dr. Antonio Yancey in his
professional capacity only

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2018, I caused the electronic filing of the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys and parties who are on the list to receive notifications for this case.

/s/ Jeremy C. Kennedy
Jeremy C. Kennedy (P64821)
24 Frank Lloyd Wright Drive, Suite D2000
Ann Arbor, MI 48105
(734) 665-4441
jkennedy@psedlaw.com