UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ADAM KANUSZEWSKI, et al.,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
et al.

    Defendant.
_____/

Case No. 18-cv-10472

Honorable Thomas L. Ludington
Magistrate Judge Patricia T. Morris

**ORDER GRANTING IN PART DEFENDANTS' MOTIONS FOR ATTORNEY FEES AND DIRECTING SUPPLEMENTAL BRIEFING**

On February 8, 2018, Plaintiffs Adam and Ashley Kanuszewski, Shannon Laporte, and Lynette Wiegand filed a complaint pursuant to 42 U.S.C. § 1983 as parent-guardians and next friend to their minor children (collectively, "Plaintiffs"). ECF No. 1. They alleged that the State of Michigan operates an unconstitutional Newborn Screening Program which involves sampling, testing, and storing infant blood without parental consent. The complaint named Defendants Michigan Department of Health and Human Services (MDHHS) and its director Nick Lyon, MDHHS Bureau of Laboratories director Dr. Sandip Shah, state epidemiologist and Michigan BioTrust manager Dr. Sarah Lyon-Callo, MDHHS Newborn Screening managers Harry Hawkins[1] and Mary Kleyn, Michigan Neonatal Biobank (the "Biobank") (also known as the Michigan Neonatal Biorepository) and its director Dr. Antonio Yancey. The named individuals were sued in their official and individual capacities. Plaintiff filed an amended complaint (which they titled as a "corrected complaint")) to address a deficiency in the original complaint (no summons requested), which was stricken. ECF No. 3.

---

[1] Mr. Hawkins has since passed away.

Defendants filed motions to dismiss. ECF Nos. 15, 21. In response, Plaintiffs filed a second amended complaint as of right, and the motions to dismiss were terminated as moot. *See* ECF Nos. 26. Defendants then filed motions to dismiss the amended complaint pursuant to Federal Rule of Civil procedure 12(b)(1) and 12(b)(6). ECF No. 32, 33, 34.

On August 8, 2018, the Court entered an order granting the motions to dismiss, dismissed the complaint, and entered judgment in favor of Defendants. ECF Nos. 50–51. Plaintiffs appealed that same day. ECF No. 52. In the order granting the motions to dismiss, the Court addressed four potential classes of claims: 1) blood testing in violation of the fourteenth amendment; 2) blood retention and use in violation of the fourteenth amendment; 3) blood testing in violation of the fourth amendment; and 4) blood retention and use in violation of the fourth amendment. The Court found that none of the claims were cognizable. On September 5, 2018, Defendants moved for attorney fees as a prevailing party under 42 U.S.C. § 1988. The State Defendants filed their own motion, as did Defendant Biobank and Antonio Yancey. ECF Nos. 54-55.

**I.**

In any action or proceeding to enforce a provision of sections 42 USCS §§ 1981-1983 the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. Prevailing defendants are entitled to attorney's fees upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978). "[A]n award under section 1988 may only be charged against the losing party, not the party's attorney." *Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed'n of Teachers, AFL-CIO*, 829 F.2d 1370, 1374 n. 1 (6th Cir. 1987)

To determine whether a suit is frivolous, courts consider "whether the issue is one of first impression requiring judicial resolution, whether the controversy is sufficiently based upon a real threat of injury to the plaintiff, whether the trial court has made a finding that the suit was frivolous under the Christiansburg guidelines, and whether the record would support such a finding." *Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 636 (6th Cir. 2009) (citing *Tarter v. Raybuck*, 742 F.2d 977, 986 (6th Cir. 1984)). A claim may be unreasonable where no reasonable person could think that he would succeed on the claim. *See Dabbs v. Bolin*, 21 F.3d 427 (6th Cir. 1994). A claim is without foundation where it is meritless or groundless. *Hughes*, 449 U.S. at 14. That plaintiff lost his case does not mean the action was frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421. Moreover, an award of fees to a prevailing plaintiff is much more common than an award of fees to a prevailing defendant. *Id.* at 417–418.

**II**.

In the order granting the motion to dismiss, the Court considered four potential classes of claims: 1) blood testing in violation of the fourteenth amendment; 2) blood retention and use in violation of the fourteenth amendment; 3) blood testing in violation of the fourth amendment; and 4) blood retention and use in violation of the fourth amendment.

**A.**

The Court dismissed Plaintiffs' claim that the blood testing (i.e. the extraction itself, as distinct from the retention and use) violated their fundamental rights under the fourteenth amendment. Plaintiffs relied primarily on *Cruzan* for the notion that they had a fourteenth amendment right to refuse unwanted medical procedures. *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990). Defendants take issue with Plaintiffs' reliance on

*Cruzan*. In rejecting *Cruzan*, this Court noted the importance of distinguishing between the constitutional liberty interests at issue:

> First, the parties refer to the right of a child to have its parent make medical decisions on its behalf. Second, the parties refer to the right of a competent person to refuse unwanted medical procedures. Third, the parties refer to a parent's right to make decisions concerning the care, custody, and control of their children.

Order at 5. The Court concluded that there was no legal authority to support the existence of "a child's right to have its parent make medical decisions on its behalf." The Court also concluded that *Cruzan* did not address a parent's right to make decisions regarding their children. Rather, *Cruzan* addressed the right of competent individuals to refuse medical care. The Court distinguished *Cruzan*, noting that infants are not competent individuals.

The Court also found that the right of parents to control their children did not grant parents the right to refuse medically necessary treatment for their children:

> The Supreme Court has also recognized "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). It is equally true that "a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." *Parham v. J.R.*, 442 U.S. 584, 603 (1979) (holding that, notwithstanding a parent's desire to have their child committed for mental health treatment, the child is entitled to an evaluation by a neutral fact finder with final decision-making authority regarding whether the child ought to be committed). Indeed, Supreme Court precedent recognizes "two competing values of equal worth: the right of parents to parent and the right of children to safety." *Spiering v. Heineman*, 448 F. Supp. 2d 1129, 1140 (D. Neb. 2006)

Applying rational basis review, the Court concluded as follows:

> [t]he State of Michigan has a legitimate interest in early detection of diseases in infants and that the blood testing is connected to that objective. Given the State's interest in safeguarding infant health, and the minimally invasive nature of the procedure (a heel stick drawing 5-6 drops of blood), the blood test does not violate the parents' right to make decisions concerning the care, custody, and control of their children

It is no easy task to draw a line beyond which the parent's interest in parenting must yield to the state's interest in protecting lives. Based on this Court's reading of the pertinent case law, the Court disagreed with the Plaintiffs as to where that line should be drawn. Moreover, the law of substantive due process is amorphous, and the three rights discussed above are interrelated, albeit legally distinct. Plaintiffs' failure to appreciate the subtlety of the distinction articulated above is far from vexatious conduct. Plaintiffs' position was hardly an unreasonable one and was well within the bounds of reasonable advocacy.

## B.

The Court also dismissed Plaintiffs claim that the blood testing violated their fourth amendment rights to be free from unreasonable search and seizure. Defendants relied on *Attson* to support the proposition that a blood test for strictly medical purposes is not a search under the fourth amendment. *United States v. Attson*, 900 F.2d 1427, 1433 (9th Cir. 1990)). Plaintiffs relied heavily on *Dubbs* to support the opposite conclusion. In *Dubbs*, the 10th Circuit held that medical evaluations of school children by nurses without parental consent constituted searches under the fourth amendment. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1205 (10th Cir. 2003). The *Dubbs* court rejected the notion that "non-criminal" and "non-investigatory" searches fell outside the scope of fourth amendment protections. *Id.* The *Dubbs* court noted that fourth amendment protections extend to administrative searches as well. *Id.* (citing *Attson*, 900 F.2d at 1433). The *Dubbs* court distinguished *Attson*, in which "the medical procedure was consensual; the real issue was the legality of providing the results to police." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1205 (10th Cir. 2003).

After reviewing the most pertinent authority, this Court concluded that the blood extraction was indeed a search. Ultimately, however, this Court concluded that the search was a

reasonable one, noting that 1) the exercise of government authority was entirely distinct from that of law enforcement; 2) there was no individualized suspicion of wrongdoing (the blood extraction was performed on all infants); and 3) the extraction was performed in furtherance of the public health and safety, by facilitating early diagnoses, treatment, and prevention of infant maladies. The Court underscored the minimally invasive nature of the procedure (a heel prick drawing 5-6 drops of blood). This minimally invasive procedure was in stark contrast to the procedure in *Dubbs*.

In sum, the Court disagreed with Defendants as to the first component of the fourth amendment inquiry (namely whether the extraction was a search). With respect to the reasonableness of that search, the Court engaged in an extensive analysis distinguishing *Dubbs* and limiting it to its facts. Plaintiffs' claim was ultimately rejected, but it was well within the bounds of reasonable advocacy.

## C.

The Court dismissed Plaintiffs' claims that the retention and use of the blood samples (as distinct from the extraction) violated their fourteenth amendment substantive due process rights and their fourth amendment rights to be free from unreasonable search and seizure. These claims were dismissed because Plaintiffs did not plead facts demonstrating that their blood samples were used contrary to their express wishes. Order at 12.

Defendants argue that this is the most glaring defect in Plaintiffs' complaint. Indeed, Plaintiffs allegations and arguments here reflected a lack of pre-suit investigation and a lack of candor. Plaintiffs contended that they "*might* have been presented with a card giving the Parents an option of whether they want their Infants' <u>*already*</u> illegally seized and tested blood to be donated to medical research." Compl. ¶ 46 (emphasis added, and in original). Whether they were

presented a consent card is not an issue about which reasonable minds could disagree. That information could have been confirmed before filing suit. Plaintiffs failure to do so reflects a lack of candor and a lack of good faith.

Plaintiffs also alleged that "*if* they did sign such a document they had insufficient understanding of matters they asked/*forced* to sign and thus were not given proper informed consent." *Id.* ¶ 48. (emphasis added). Again, the use of hypothetical language ("if they did sign") indicates both a failure to confirm facts pre-suit and/or a lack of candor with respect to facts already known. Plaintiffs never contended that the signatures were forgeries. Thus, the signatures on the forms produced by the Defendants strongly suggests that Plaintiffs did indeed sign such forms.[2]

Plaintiffs appeared to argue, in the alternative, that if they did sign such forms they did not give proper informed consent. Plaintiffs made no attempt to develop the theory that the consent forms were constitutionally deficient or that the consent forms were ineffective means to request informed consent.

Plaintiffs' use of hyperbolic language such as "*forced* to sign" also demonstrates a lack of candor and a lack of good faith. If the hospital staff had in fact compelled the parents to sign the consent forms against their will, surely that allegation would have been explained in the complaint. A complaint is a vehicle by which a Plaintiff can set forth *facts* explaining how he/she was wronged. When faced with a motion to dismiss, Plaintiffs' allegations are granted the benefit of a presumption of truth. A complaint is not a novel or vehicle for artistic expression. The use of hyperbole is not consistent with rule 8(a)(2)'s requirement that a plaintiff set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," nor is it consistent with

---

[2] Plaintiffs noted that only 7 of the 9 forms had been produced, and 2 of those 7 contained denials of consent. Nevertheless, Plaintiffs unreasonably refused to candidly acknowledge the other 5 forms.

Rule 11(b)'s requirement that factual allegations be asserted in good faith and with evidentiary support.

Finally, Plaintiffs fell back on the notion that the consent forms attached to Defendants' motion to dismiss could not be considered at the motion to dismiss stage. This was not a good faith argument. It is well established that a district court can consider exhibits attached to a defendant's motion to dismiss without converting the motion into one for summary judgment where two conditions are met: 1) the documents are referred to in the complaint, and 2) are central to the claims contained therein. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). It is beyond debate that the consent forms meet both criteria.

Irrespective of the consent forms, Plaintiffs claims based on retention and use of the blood samples failed for another reason, namely lack of standing. Plaintiffs did not make a good faith effort at articulating how they were subject to a real threat of injury. This weighs in favor of granting fees. *See Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 636 (6th Cir. 2009) (noting that frivolousness depends in part on "whether the controversy is sufficiently based upon a real threat of injury to the plaintiff."). Indeed, as the Court explained in its previous order, Plaintiffs purported injury appeared to be dependent on an entirely hypothetical state of facts:

> Based on the alleged misuse of blood samples of other individuals who are not parties to this case, Plaintiffs "are concerned and fear about the misuse of [their private medical and genetic information] and fear the possibility of discrimination against their Infants and perhaps even relatives through the use of such blood samples and research activity thereon." Am. Compl. ¶. 79 Plaintiffs further allege that their fear is "well-founded and actual as the sharing of blood spots containing deeply private medical information has recently resulted in the arrest of an alleged killer but has already resulted in the wrongful arrest of persons who were not guilty of any crime." *Id.* It is entirely unclear what Plaintiffs are referring to when they discuss their fear of the "possibility of discrimination," or how that fear is connected to the alleged misuse of blood samples. In a roundabout way, Plaintiffs appear to be trying to establish that law enforcement use of blood samples in other cases poses a realistic threat that the government will use Plaintiffs genetic information to take some action against them. But this contention is entirely

> hypothetical. It is clear that the "possibility of discrimination" is an insufficient injury to support article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. at 560 (noting that injury in fact must be "actual or imminent, not conjectural or hypothetical")

Order at 21–22.

In sum, Plaintiffs refused to candidly acknowledge the existence of the consent forms, and the impact of those forms on their claims for wrongful retention and use of their blood samples. Moreover, Plaintiffs were not subject to a real threat of injury based on that allegedly wrongful conduct. Plaintiffs feared non-specific "misuse" and "discrimination," and contended that the arrest of the golden state killer was somehow an example of such misuse and discrimination. Accordingly, the claims under the fourth and fourteenth amendment for wrongful retention and use of the blood samples (as distinct from the initial extraction) were frivolous. Defendants will be granted partial fees incurred in defending these claims.

**III**.

Two other matters should be addressed. First, Plaintiffs contend that the fee motion is untimely under Federal Rule of Civil Procedure 54(d)(2)(B)(i), which provides that a fee motion be filed no later than 14 days after the entry of judgment. Local Rule 54.12, of course, allows 28 days. The fee motions here were filed within 28 days of the entry of judgment, and are therefore timely. Plaintiffs offer an extensive discussion regarding the conflict between the local rule and the federal rule, and how that conflict ought to be resolved. Plaintiffs explanation is unavailing. District courts are free to adopt local rules establishing timeliness standards for the filing of claims of attorney's fees, as the Eastern District of Michigan has done in Local Rule 54. *Epperson v. Colbert*, 2017 WL 624198, at *5 (6th Cir. Feb. 15, 2017); *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 257 (6th Cir. 1997); *White v. New Hampshire Dept. of Emp't Sec.*, 455 U.S. 445, 454 (1982)).

Second, Plaintiffs argue that the fees sought are not reasonable and that Defendants have not produced sufficient billing records to substantiate their fee request. Plaintiffs are free to renew these arguments in response to Defendants' supplemental brief, which should reflect significant changes to their fee request.

**IV.**

Accordingly, it is **ORDERED** that Defendants' motions for attorney fees, ECF Nos. 54-55, are **GRANTED** in part.

It is further **ORDERED** that Defendants are **DIRECTED** to submit supplemental briefing setting forth the amount of those fees, as set forth above. Defendants supplemental briefs are due on **February 8, 2019**. Plaintiffs supplemental response is due on **February 15, 2019.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 24, 2019